Peelle, J.,
delivered the opinion of the court:
The claimant, as assignee of Amanda Cormack, seeks to recover repayment of the purchase money for certain lands which the General Land Office erroneously allowed to be entered and settled upon by her, and which, for that reason, could not be confirmed.
The claimant grounds its right to recover on section 2 of the act of June 16, 1880 (21 Stat. L., 287), which reads:
“In all cases where homestead or timber-culture or desert-land entries or other entries of public lands have heretofore *535 or shall hereafter be canceled for conflict, or where, from any cause, the entry has been erroneously allowed and can not be confirmed, the Secretary of the Interior shall cause to be repaid to the person who made such entry, or to his heirs or tmigns, the fees and commissions, amount of purchase money, and excesses paid upon the same, upon the surrender of the duplicate receipt and the execution of a proper relinquishment of all claims to said land whenever such entry shall have been duly canceled by the Commissioner of the General Land Office.” * *
The land in question was entered by Amanda Cormack, in Montana, October 25,1888, and she resided thereon from that date until April 30, 1890, when she made final proof, which was accepted May 9, following.
On the next day, May 10,1890, she procured a loan of §300 from the Northwestern Guaranty Loan Company, and to secure the payment thereof she, on May 12, 1890, executed a mortgage on all the land so entered, which mortgage was duly recorded.
On June 9, 1890, the Northwestern Guaranty Loan Company assigned for value said note and mortgage to the claimant as trustee.
January 8, 1890, the township in which 120 acres of the land in question were situated had been selected and recommended for reservoir purposes, and, after notifying the local land office thereof, the Commissioner of the General Land Office, on August 16, 1890, canceled said entry as to the 120 acres so situated.
The claimant company ^brought suit in the United States district court, eighth judicial district, to foreclose said mortgage, of which the defendants were notified February 7,1896; and on April 29, 1896, a decree of foreclosure was entered, ordering the sale of the mortgaged premises to satisfy said debt and the. costs of suit. On August 16, 1897, the mortgaged premises were sold and the claimant herein bought the whole tract of 160 acres for §230, to whom a sheriff’s deed was executed and delivered in due course.
Thereafter the claimant applied to the Commissioner of the General Land Office for the repayment of §150, being the purchase price of the 120 acres so held to have been erroneously entered. The Commissioner disallowed the claim, but *536 on appeal to the Secretary of the Interior that officer reversed his decision and allowed repayment of said amount on condition that the claimant company relinquish to the United States all claim to the land so canceled.
The claimant having filed its relinquishment, as required by the rules and regulations of the Land Office, the latter did, on July 24, 1899, transmit said allowed claim to the Treasury Department for final settlement. The Auditor of the Treasury for the Interior Department favorabty passed upon said claim, but his decision was overruled and the claim finally disallowed by the Comptroller.
Two questions are presented: First, is the allowance by the Secretary of the Interior final and conclusive as to the facts and the law? Second, is the claimant company the assignee of the original entryman within the meaning of the section of the act quoted?
In the case of Medbury v. United States (173 U. S., 492, 497), where the construction of the same section of the act of 1880 was under consideration, the court, speaking by Mr. Justice Peclcham, said:
“If there were any disputed questions of fact before the Secretary, his decision in regard to those matters would probably be conclusive, and would not be reviewed in any court. But where, as in this case, there is no disputed question of fact, and the decision turns exclusively upon the proper construction of the act of Congress, the decision of the Secretary refusing to make the payment is not final, and the Court of Claims has jurisdiction ox such a case.”
In view of the construction thus placed upon the act, we need not consider what "analogy, if any, there is between it and Revised Statutes, section 3220, respecting the power of the Commissioner of Internal Révenue to remit, refund, and pay back taxes erroneously or illegally assessed and collected; for while it is true the Supreme Court and this court have held that under section 3220 an allowance made by the Commissioner of Internal Revenue is, in the absence of fraud or mistake, binding on the Government and may be made the basis of an action in this court, the court, in the case cited, held otherwise in respect of the power of the Secretary of the Interior under the act of 1880, supra — i. e., where “the deci *537 sion turns exclusively upon the proper construction of the act of Congress, the decision of the Secretary refusing to make-payment is not final, and the Court .of Claims has jurisdiction of such a case. ” Hence it follows that, as the decision of the Secretary of the Interior in this case turns exclusively upon the proper construction of the act o'f Congress, such decision is open to review; and it matters not that his decision is.in conformity with the law, for, being subject to review in that respect, it has not the force of an award upon which an action can be founded in this court.
The remaining question is, Is the claimant company the assignee of the original entryman within the meaning of the act! In the case of Hoffeld, executrix, etc., v. United States (186 U. S. R., 273), affirming the judgment of this court (26 C. Cls. R., 26), the court, in,defining the word “assigns” in the section quoted, said:
‘ ‘ ‘Assigns,’ or, as the word is more commonly spelled, ‘assignees,’ are of two classes, depending upon the manner of their creation: First, voluntary assigns, who-are created by act of the parties; and, second, assignees created by operation of law. Whether in a given case an assignee belongs to the first or second class depends upon the purpose for which he was created, the object to be attained by his creation, and the language of the statute or other instrument from which he derives his power. A voluntary assignee is ordinarily invested with all the rights which his assignor possessed with respect to the property, while the rights of an assignee by operation of law are such as are necessarily incident to the complete possession and enjoyment of the things assigned. A voluntary assignee takes the property with all the rights thereto possessed by his assignor, and if he has paid a valuable consideration, may claim all the rights .of a Iona fide purchaser with respect thereto. Upon the other hand, an assignee by operation of law — as, for instance, a purchaser at a judicial sale — takes only such title as the execution debtor possessed at the time of sale. (The Monte Allegre, 9 Wheat., 616.) The doctrine of caveat envptor applies in all its rigor, and the buyef’ can not set up the rights of a honafide purchaser even against an unrecorded deed.”
Thus it was held that an assignee by operation of law, such as a purchaser at a judicial sale, took “only such title as the execution debtor possessed at the time of sale;” that in such ease the doctrine of caveat emgitor applied “in all its rigor;” so that the buyer at such sale could not “set up the rights of *538 a Ion a fide purchaser, even against an unrecorded deed.” But that ruling is not controlling in the case at bar, for the reason that when Amanda Cormack, the original entryman, on May 12, 1890, executed and delivered the mortgage to the Northwestern Guaranty Loan Company, conveying the real estate as security for the loan of $300, she thereby parted with all the right, title, and interest she had in the mortgaged premises, save and except her equity of redemption; and when the claimant company acquired title b\T virtue of the decree of foreclosure, in which her equity of redemption was forever barred and foreclosed, the title related back to the date of the execution of the mortgage and thereby cut off all intervening rights and equities. Or, as was said by the Auditor of the Treasury for the Interior Department in passing upon this identical claim, “The holder of the incumbrance, by proceeding to foreclose his mortgage lien, may secure a sale of whatever vested rights or possibilities in the land title that were held by the mortgagor at the date of the mortgage, and such sale, after the expiration of the period of redemption, would vest in the purchaser all the rights of the mortgagor at the date of the mortgage, present and prospective. ”
And so in Jones on Mortgages, Vol. II, section 1654, it is said: “Title acquired by foreclosure relates back to the date of the mortgage, so as to cut off intervening equities and rights. If all subsequent purchasers and incumbrancers are made parties to the bill, the title under the mortgage foreclosure is perfected to an absolute one. In such case the purchaser acquires the title of the mortgagee, and also the title of the mortgagor as it stood at the time of the making of the mortgage.” And further, “ the mortgagor is estopped from denying the title he has set forth in his mortgage.” (Vallejo Land Association v. Viera, 48 Cal., 572.) This may be said to be the general rule, for the support of which no other authorities need be cited.
Therefore, on failure of the mortgagor’s title by reason of the erroneous entry and as incident to the land so mortgaged as security, the claimant company acquired, under the act of 1880, the right to the repayment of the purchase money.
The act itself recognizes the right of the entryman to assign his right and interest in the land before confirmation of his *539 entry, i. e., “where from any cause the entry has been erroneously allowed and can not be confirmed, the Secretar}' of the Interior shall cause to bo repaid to the person who made such entry, or to his heirs or assigns,” the purchase money, etc., though that right, in the absence of any statute to the contrary, is inherent in the ownership of the land or of any interest therein. Had the claimant conveyed the land by deed instead of by mortgage, there could be no question as to the grantee’s light to the repayment-of the purchase money on failure of the grantor’s title by reason of-the erroneous entry; or, as was said by the court in the case of Hoffeld (supra), in speaking of one who seeks a right under a statute, he “must bring himself clearly within its equity as well as within its letter, and must show himself entitled not only to the land itself, but to everything which the statute has annexed thereto as an incident. ”
When “the entry has been erroneously allowed and can not be confirmed ” the right to repayment of the purchase money accrues “to the person who made such entry, or to his heirs or assigns. ” Clearly the word “ assigns” has reference to the assignee of the land, whether the title or interest therein be acquired by deed or through a mortgage, for in either case the conveyance is by the voluntary act of the entryman; and to hold that after such conveyance a claim to repayment of purchase money would accrue to the entryman instead of his assignee, under such circumstances, would be aiding him to defraud his creditors, to which the 'Government would be a party.
True the court, in the case of Hoffeld (supra), said: “The right to a return of the purchase money is in no sense an incident to the land and did not pass to the purchaser upon the sale under the execution. ” But that was said with reference to a sale of real estate on execution, where the execution debtor had not voluntarily assigned his right, title, or interest in the land; and having done no act which carried with it either the land or the right to the repayment of the purchase money, the entryman’s right to repayment was not divested by such sale. In other words, he had not voluntarily assigned or transferred his right or title to the land where the entry was found to have been erroneously allowed, and hence he *540 stood, in respect of the right to repayment, in the same position he would had no salo of the land on execution taken place.
The purchaser in that case became the assignee by operation of law, and therefore took, as the court said, “ only such title as the execution debtor possessed at the time of sale;” while the right to the repayment of the purchase money did not become consummate until the cancellation of the entry seven years later; and as the entryman had done no act which carried with the land the right to the repayment of the purchase mone3r, he remained the owner of the claim. But whether such claim, independent of the land, could have been assigned by him so as to vest in his assignee as against the Government the right to prosecute such claim, or whether in that respect the act of 1880, recognizing assignees, has the effect to repeal or suspend Revised Statutes, section 3477, prohibiting’ the voluntary assignment of claims, is not material to this case, except by way of argument to show the contrast, i. e.', that by the execution of the mortgage the entryman did perform a voluntary act which carried with the land the right to the repayment of the purchase money on failure of the ontryman’s title, which right became consummate in his assignee upon the decree of foreclosure and sale, as by such proceedings and sale not only was the entry man’s equity of redemption forever barred and foreclosed, but the purchaser’s title related back to the date of the mortgage, thereby including-all the right, title, and interest of the mortgagor at that date, one of which was the right to the repayment of the purchase money on failure of title by reason of an erroneous entry.
True the mortgagor’s equit}- of redemption was barred and foreclosed by virtue of the decree of foreclosure and sale, if it had not previously been extinguished by the cancellation of the entry, but by his voluntary act he had consented that on failure to pay, his equity of redemption might be barred and foreclosed. And furthermore, it was bjr. virtue of the mortgage and not the foreclosure and sale that constituted the claimant company his assignee. In other words, by virtue of the mortgage the claimant company became the assignee of the entryman, and assuming that notwithstanding the cancellation of his entry as to the 120 acres it became necessary to foreclose the mortgage, it was not for the purpose of acquir *541 ing the rights of an assignee in respect to the repayment of the purchase money, but to bar the entryman’s equity of redemption in and to the mortgaged premises. That done, the mortgagee’s right to receive payment was complete as required by the rules and regulations of the. Department.
The cancellation of the entry subsequent to the execution of a mortgage would not have the effect to deprive the mortgagee of the right to foreclose his mortgage; and while after cancellation there seems to be little reason why the mortgage should be foreclosed, as to the 120 acres, still under various decisions of the Land Office it has been held, in substance, that a mortgagee prior to a decree of foreclosure and sale is not an assignee, thereby requiring such foreclosure, in order to bar the mortgagor’s equity of redemption, which latter has been done in this case.
In speaking of the construction of the act by the Secretary of the Interior and of the accounting officers, the Auditor of the Treasury for the Interior Department, who is familiar therewith, said in passing on the present claim: “The uniform construction of the Secretary of the Interior and the accounting officers has been that the word ‘ assigns ’ as used in said act meant those to whom the the entryman’s interest in the land was conveyed prior to the cancellation of the entry. That after the cancellation the entryman had no interest in the land which he could assign, but only a simple claim against the United States for repayment, and that this was not assignable, such assignment being prohibited by section 3477 of the Revised Statutes. If this bo the correct view of the statute, and 1 have no doubt that it is, the.right of the assignee must antedate the cancellation of the entry and be an assignment of the land within the meaning of the statute prior to such cancellation.” Furthermore, he said: “The entryman, while the mortgage remains uncanceled, can not secure repayment, because under Regulations of August 6, 1880, if the title has not become a matter of record he must swear that he has not convejmd or otherwise encumbered the title to the land, and if the title has become a matter of record, ‘a certificate must also be produced from the proper recording officer where the land is situated showing that said deed is so recorded, and that the records of his office do not exhibit any other conveyance *542 or incumbrance of the title of the land.' See sections 4 and 5 of Regulations of August 6, 1880.”
As has been freqently held by the Supreme Court, the construction of a statute by the head of an executive department charged with-its execution is entitled to great weight, and in case of doubt controlling. In our view of the statute the ruling of the Secretary of the Interior in allowing repayment to the claimant as assignee was correct, both in ’principle and on authority. The Government received the money for the land under a statute which created in the entryman, his heirs or assigns, a right to the repayment of the purchase money if from any cause the entry had been erroneously allowed and could not be confirmed; and the entry for that reason having been canceled, thereby depriving the claimant company of its security, the court holds that by the execution of the mortgage so conveying the land the right to the repayment of the purchase money thereby accrued to the mortgagee, who, having foreclosed the equity of redemption of the mortgagor, is entitled, as such assignee, to the repayment of the purchase money, and judgment will be entered accordingly.