UNITED STATES v. HOWARD et al.

(Circuit Court of Appeals, Eighth Circuit. December 19, 1917.)

No. 4787.

1. PUBLIC LANDS ☞120—HOMESTEADS—ACQUISITION.

On testimony that he had continually resided on the land for five years after application, defendant was granted a patent. It appeared that he had not cultivated the land during that time, and had improved it only by erecting some wire fences and preparing a rude dugout, in which he occasionally spent a night or two; it being his custom to go onto the premises from other land on which he lived, and to there stay a short time, eating food prepared away from the homestead property. *Held* that, as the purpose of the Homestead Act (Rev. St. §§ 2289–2291 [Comp. St. 1916, §§ 4530–4532]) is to allow bona fide settlers to obtain a home, and as to secure the gift the applicant must show that he has made the land a homestead, the patent granted to defendant should be vacated on the ground of fraud in its procurement.

2. PUBLIC LANDS ☞120—HOMESTEADS—VACATION OF PATENT.

As Rev. St. § 2291, provides that, in order to obtain a patent, the entryman must present final proofs, after the expiration of five years and before the expiration of seven years from the date of entry, showing that he has resided on and cultivated the land for a term of five years immediately succeeding the initiation of the homestead entry, an entryman, who obtained a patent by fraudulent representations that he had resided upon and cultivated the land for five years after entry, cannot

avoid a cancellation of the patent by showing that two years after obtaining his patent he raised a crop, and later resided on the land for several years, making improvements and continuing to cultivate it.

3. PUBLIC LANDS ⬦120—PATENTS—CANCELLATION.

Where an entryman, by fraudulent representations that he had resided upon and cultivated the land for five years after entry, obtained a homestead patent, he cannot defeat suit to cancel the patent on the theory that the government should place him in statu quo and reimburse him for improvements, for the government, in disposing of its public lands, does not assume the position of an ordinary vendor, but has attempted to advance the interests of the whole country by opening the lands to entry in comparatively small tracts, under restrictions designed to promote settlement and development, and a suit to cancel a patent obtained through fraudulent representations is not only one to regain title, but is intended to enforce the statutes and policy relating to settlement of public lands.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit by the United States against John B. Howard and others. From a decree for defendants, the United States appeals. Reversed and remanded, with directions.

T. S. Allen, U. S. Atty., of Lincoln, Neb.

John J. Halligan, of North Platte, Neb. (Wilcox & Halligan, of North Platte, Neb., on the brief), for appellees.

Before CARLAND, Circuit Judge, and AMIDON and MUNGER, District Judges.

MUNGER, District Judge. This suit was brought to cancel a patent issued to John B. Howard for 160 acres of land in Scotts Bluff county, Neb. The decree was in favor of the defendant. The bill alleged that the patent was obtained by false and fraudulent statements made by the entryman in making his application for the land as a homestead, and in his final proofs. The defendant filed his homestead application for this land on August 10, 1900, and on August 12, 1905, he filed a final affidavit with the register and receiver of the local land office, in which he swore that he had made actual settlement upon the land on August 15, 1900, and had cultivated it and resided thereon until August 12, 1905. At the same time he made a final proof statement, in which he swore that he had established actual residence on the land in the fall of 1900 and had cultivated about 10 acres for each season. He also produced two witnesses who testified that he had established actual residence on the land five years before, and had resided on the land continuously.

[1] The defendant was a single man when he applied for this homestead, but was married about two years before he made final proofs. The undisputed proof shows that during the five-year period his true residence was five miles distant from this land, on other land which he rented and cultivated, where he kept his horses and farm implements, his household furniture and supplies. He prepared a rude dugout on the land claimed as a homestead, in which he placed a bed, a stove, and a table; but his attempts at occupation of this as a dwelling were limited

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to occasional visits, for one night at a time, and these visits were made not oftener than three or four times in any six months period during this five years. On these occasional visits he would take from his home on the rented land enough provisions for one or two meals on the homestead. No crops were raised on the land, nor did the claimant ever attempt to cultivate the land. The only other improvement than the dugout, was some wire fencing.

The purpose of the Homestead Act (sections 2289, 2290, 2291, Rev. Stats. [Comp. St. 1916, §§ 4530-4532]) as was said in McCaskill Co. v. United States, 216 U. S. 504, 30 Sup. Ct. 389, 54 L. Ed. 590, "is to give a home, and to secure the gift the applicant must show that he has made the land a home. Five years of residence and cultivation for the term of five years he must show by two credible witnesses." United States v. Mills, 190 Fed. 513, 111 C. C. A. 345, 42 L. R. A. (N. S.) 752; Cooper v. United States, 220 Fed. 867, 136 C. C. A. 497. Manifestly, the facts in this case show that the defendant did not make this land his home at any time prior to making final proofs, and further show that he obtained the patent to the land by fraud, as charged in the bill.

[2] Counsel for defendant practically concede that the defendant did not comply with the law as to residence and improvements before obtaining patent, but contend that the patent should not be canceled, because the defendant, two years after he obtained his patent, raised a crop of wheat on some of the land, and afterwards put on the land a house, barn, and other improvements, resided upon the land for three years, and has continued to cultivate portions of the land. In order to obtain a patent, the entryman was required by section 2291 of the Revised Statutes, to present final proofs after the expiration of five years, and before the expiration of seven years, from the date of entry, showing that the entryman had resided upon and cultivated the land for a term of five years immediately succeeding the initiation of the homestead entry. To earn the grant of a patent under this section of the statute, the entryman must maintain his residence upon and must cultivate the land for the next five years after he makes his initial entry. As the defendant did not comply with this statute, but obtained a patent by fraudulent representations that he had followed its provisions, he may not avoid a cancellation of the patent by showing that he resided upon the land for three years after his patent was obtained, and has made some improvements and cultivated a portion of the land.

[3] A further suggestion is made that the government is not entitled to a cancellation of this patent, unless it places the defendant in statu quo. A similar claim has frequently been made in suits for cancellation of patents, where the entryman was in the more favorable position of one who had paid to the government, at the time of receiving his patent, a substantial sum per acre for the land. As to such cases it is said in Causey v. United States, 240 U. S. 399, 36 Sup. Ct. 365, 60 L. Ed. 711:

"The further objection is made that the bill cannot be maintained, because it does not contain an offer to return the scrip received when the commuted entry was made. The objection assumes that the suit is upon the same plane as if brought by an individual vendor to annul a sale of land fraudulently induced. But, as this court has said, the government in disposing of its public

lands does not assume the attitude of a mere seller of real estate at its market value. These lands are held in trust for all the people, and in providing for their disposal Congress has sought to advance the interests of the whole country by opening them to entry in comparatively small tracts under restrictions designed to accomplish their settlement, development and utilization. And when a suit is brought to annul a patent obtained in violation of these restrictions, the purpose is not merely to regain the title, but also to enforce a public statute and maintain the policy underlying it. Such a suit is not within the reason of the ordinary rule that a vendor, suing to annul a sale fraudulently induced, must offer and be ready to return the consideration received. That rule, if applied, would tend to frustrate the policy of the public land laws; and so it is held that the wrongdoer must restore the title unlawfully obtained and abide the judgment of Congress as to whether the consideration paid shall be refunded. United States v. Trinidad Coal Co., 137 U. S. 160, 170, 171 [11 Sup. Ct. 57, 34 L. Ed. 640]; Heckman v. United States, 224 U. S. 413, 447 [32 Sup. Ct. 424, 56 L. Ed. 820]. And see Rev. Stat. § 2362 [Comp. St. 1916, § 4771]; Act June 16, 1880, c. 244, § 2, 21 Stat. 287 [Comp. St. 1916, § 4596]; Hoffeld v. United States, 186 U. S. 273 [22 Sup. Ct. 927, 46 L. Ed. 1160]; United States v. Commonwealth Trust Co., 193 U. S. 651 [24 Sup. Ct. 546, 48 L. Ed. 830]; United States v. Colorado Anthracite Co., 225 U. S. 219 [32 Sup. Ct. 617, 56 L. Ed. 1063]."

For the same reasons we think that the government is not required to pay the value of improvements made upon land, to which the patent was obtained by fraudulent representations, as a condition of the cancellation of the patent.

The decree of the District Court is reversed, and the case remanded, with directions to enter a decree as prayed for in the bill.