### UNITED STATES v. MEDLAND.

(Circuit Court of Appeals, Eighth Circuit. June 19, 1922.)

No. 5935.

1. **Public lands ⬅120—Rights acquired under homestead or pre-emption acts by fraud will be set aside.**

Where fraud is committed in securing government land under homestead pre-emption acts, the rights so acquired should be set aside.

2. **Public lands ⬅120—Fraud, as ground for setting aside of rights acquired under homestead or pre-emption acts, must be proved by clear, convincing, and satisfactory evidence.**

Fraud, to constitute ground for setting aside of rights in government land acquired under homestead or pre-emption acts, must be proved by clear, convincing, and satisfactory evidence.

3. **Public lands ⬅120—Evidence arousing suspicion as to whether defendant acted for himself or for others in filing application to enter land as a homestead not sufficient for setting aside of patent.**

In an action by the United States to set aside a patent issued to defendant, who had entered land as a homestead and secured his patent under Rev. St. § 2289 (Comp. St. § 4530), on the ground that the defendant had been guilty of fraud, in that he did not intend, when he filed his original application, to acquire the land for himself, but intended to secure it for others, evidence sufficient to arouse suspicion as to whether he was acting for himself or others *held* not sufficient for setting aside of patent, since titles cannot be set aside on mere suspicion.

4. **Public lands ⬅35(3)—Entryman resided on land, though required to temporarily leave it at times in order to earn living.**

The mere fact that entryman, who had entered land as a homestead under Rev. St. § 2289 (Comp. St. § 4530), temporarily left the land at times in order to make his living at work which took him temporarily from the land, did not affect the character of his residence thereon.

Appeal from the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Action by the United States against William J. Medland. Judgment for defendant, and the United States appeals. Affirmed.

James C. Kinsler, U. S. Atty., of Omaha, Neb., and Don W. Stewart, Asst. U. S. Atty., of Lincoln, Neb.

A. R. Humphrey, of Broken Bow, Neb., for appellee.

Before LEWIS and KENYON, Circuit Judges, and JOHNSON, District Judge.

KENYON, Circuit Judge. Parties will be designated as they were in the lower court. On the 16th day of June, 1902, defendant, William J. Medland, filed in the United States land office at Broken Bow, Neb., his application, under section 2289 of the Revised Statutes of the

United States (Comp. St. § 4530), to enter certain land as a homestead. The necessary affidavit, as required by law, was filed, stating that said application was made in good faith, for the purpose of actual settlement and cultivation. In June, 1908, defendant made the necessary proof in the United States land office at Broken Bow, Neb., to secure his patent, and patent was issued to him October 19, 1908, conveying the legal title to the southwest quarter of section 24, township 19 north, range 26 west of the sixth principal meridian, Neb., containing 160 acres, more or less. October 17, 1914, the United States government filed an action in equity against said Medland to cancel said patent, on the ground that defendant, William J. Medland, had been guilty of fraud in securing the same, in that he did not intend, at the time he filed his original application, to acquire the land for himself as a homestead, but intended to secure it for others; that he did not carry out the requirements of the law, and did not reside upon said land for the requisite period of time. The case was not tried until 1921.

The only question in this case is whether or not the defendant, Medland, was guilty of fraud in the securing of said patent. The purpose of the homestead laws of the United States is well understood. It is to assist poor and worthy people to acquire a part of the public domain, in order to have a home and earn a livelihood. It was not and is not the intention of the government that lands may be acquired merely for the purpose of speculation, or to secure, as agent for others, land which they might desire. The purpose is well stated in McCaskill Co. v. United States, 216 U. S. 504, 510, 30 Sup. Ct. 386, 389 (54 L. Ed. 590):

"It may be well here to consider what the law requires. It gives the right of entry of 160 acres of land as a homestead, upon the condition, however, which must be established by affidavit, that the 'application is honestly and in good faith made for the purpose of actual settlement and cultivation, and not for the benefit of any other person'; that applicant will honestly endeavor to comply with the requirements of settlement and cultivation, and does not apply to enter the same for the purpose of speculation. The purpose of the law, therefore, is to give a home, and to secure the gift the applicant must show that he has made the land a home. Five years of residence and cultivation for the term of five years he must show by two credible witnesses."

In Bohall v. Dilla, 114 U. S. 47, 51, 5 Sup. Ct. 782, 784 (29 L. Ed. 61), speaking of the pre-emption laws:

"Those laws are intended for the benefit of persons making a settlement upon the public lands, followed by residence and improvement and the erection of a dwelling thereon. This implies a residence, both continuous and personal."

In United States v. Collett, 159 Fed. 932, 933, 87 C. C. A. 460, 461, this circuit, the court says:

"The statute requires residence and cultivation in good faith for a period of five years by an entryman to entitle him to a patent of a homestead. The public land belongs to the government, and it may impose such conditions upon its alienation as to it seems best; and when, through fraudulent representations or practices, a patent has been wrongfully secured from the government, equity, as long as the title remains in the patentee, at least, af-

fords ample redress. United States v. Bell Telephone Co., 167 U. S. 224, 238, 17 Sup. Ct. 809, 42 L. Ed. 144."

[1, 2] Were fraud actually committed by any one in securing governmental land under homestead or pre-emption acts, courts should be quick to set aside any rights derived therefrom; but the evidence of fraud must be clear, convincing, and satisfactory. In Atlantic Delaine Co. v. James, 94 U. S. 207, 214 (24 L. Ed. 112), the court says:

"Canceling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised, except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear."

The doctrine is so well stated in Maxwell Land Grant Case, 121 U. S. 325, 381, 7 Sup. Ct. 1015, 1029 (30 L. Ed. 949), that we set out the following:

"We take the general doctrine to be that, when in a court of equity it is proposed to set aside, to annul, or to correct a written instrument for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it cannot be done upon a bare preponderance of evidence, which leaves the issue in doubt. If the proposition, as thus laid down in the cases cited, is sound in regard to the ordinary contracts of private individuals, how much more should it be observed where the attempt is to annul the grants, the patents, and other solemn evidences of title emanating from the government of the United States under its official seal. In this class of cases, the respect due to a patent, the presumptions that all the preceding steps required by the law had been observed before its issue, the immense importance and necessity of the stability of titles dependent upon these official instruments, demand that the effort to set them aside, to annul them, or to correct mistakes in them, should only be successful when the allegations on which this is attempted are clearly stated and fully sustained by proof. It is not to be admitted that the titles by which so much property in this country and so many rights are held, purporting to emanate from the authoritative action of the officers of the government, and, as in this case, under the seal and signature of the President of the United States himself, shall be dependent upon the hazard of successful resistance to the whims and caprices of every person who chooses to attack them in a court of justice; but it should be well understood that only that class of evidence which commands respect, and that amount of it which produces conviction, shall make such an attempt successful."

We turn from these statements of the general law, which are, of course, familiar and fundamental, to the evidence in this case. Is the testimony here so clear and convincing that there is no doubt as to the patent being fraudulently secured? Is fraud in any way established by the testimony? Oral testimony was introduced by the government, and also the record of the testimony taken at the time defendant made his proof before the Land Department. Herbert Jarmin, a witness under the homestead proof, testified:

"I met Mr. Medland in the summer of 1905, and he was living on his homestead then. I have always understood that he lived there previous to this date."

Charles Jarmin (page 39 of the transcript of record) testified:

"Claimant established actual residence in the summer of 1903. I lived about four miles from him, and was at his homestead."

Merritt W. Gamble (page 54 of the transcript of record) testified that in 1902, and up to 1908, he passed this land frequently. He says:

"On those trips by his homestead, I would go between the well and the house, probably within 25 yards of the house. If I remember right, there was a small sod house first built on there, but I couldn't say when that was. I don't think that was before the homestead entry was made."

Defendant himself testifies (page 42 of the transcript of record):

"I established actual residence on the land in March, 1903. I built a sod house, and completed it March 10, 1903."

[3, 4] Later, under the undisputed evidence, a frame house was built. The record does not clearly disclose just when this house was constructed. Medland's testimony was that it was about 3½ years before the time he proved up and secured his patent. The statements of these witnesses were made at the time the proof was taken to secure the patent. Some contrary evidence was introduced on the trial. The evidence given at the time of the issuance of the patent is of greater weight than the evidence of those who testified many years thereafter. We are satisfied that the evidence taken before the trial court fails to show, in any clear and convincing manner whatever, any fraud upon the part of defendant, Medland. There is enough in the record to arouse suspicion as to whether Medland was acting for Tierneys or for himself. Titles cannot be set aside on mere suspicion. There is substantial evidence to show his residence for the required period of time. It must be borne in mind that he was a bachelor, and was working at times along lines which took him temporarily away from the place. That does not destroy the character of residence. Attention is called to the case in this court of United States v. Howard, 247 Fed. 455, 159 C. C. A. 509, in which a patent to Howard was set aside in a suit by the government. The case is decidedly different from the case at bar; the court there saying (247 Fed. 457, 159 C. C. A. 511):

"Manifestly the facts in this case show that the defendant did not make this land his home at any time prior to making final proofs, and further show that he obtained the patent to the land by fraud, as charged in the bill."

We think the facts here show that, while defendant was away from the premises a good deal, he was a poor man, and had to work away from the land in order to make his living. That fact in itself is no indication whatever of fraud, and should not weigh against him. The evidence to contest his right does not go beyond the realm of suspicion. No fraud has been shown.

The decision of the trial court is correct, and the same is affirmed.