## WAPLES *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

Argued January 2d, 1884.—Decided March 3d, 1884.

*Confiscation—Deed—Judicial Sale.*

In a sale under the Confiscation Act, of July 17th, 1862, 12 Stat. 589, the purchaser is presumed to know that if the offender had no estate in the premises at the time of seizure, nothing passed to the United States by decree or to him by purchase, and general language of description in his deed will not operate as a warranty or affect this presumption; and this rule prevails as to the United States, although a different rule may prevail in the State where the property is situated as to judicial sales under State laws.

*Mr. C. W. Hornor* and *Mr. Mason Day* for appellant.

*Mr. Solicitor-General* for appellee submitted the case on his brief.

MR. JUSTICE FIELD delivered the opinion of the court.

In March, 1865, the plaintiff purchased for the sum of $7,400

certain real property in New Orleans at a sale upon a decree rendered by the District Court of the United States in pro- ceedings for its confiscation under the act of July 17th, 1862, and subsequently obtained a deed of the property from the marshal. The proceedings were instituted in the usual form by a libel of information filed on the 7th of August, 1862, by the district attorney of the Eastern District of Louisiana on behalf of the United States, against ten lots of ground alleged to be the property of Charles M. Conrad. The libel sets forth that the marshal of the district, under authority from the dis- trict attorney, given pursuant to instructions of the Attorney- General, had seized the lots of ground, which are fully described, as forfeited to the United States; that they were owned by Conrad then, and on the 17th of July, 1862, and previously; that after that date he had acted as an officer of the army or navy of the rebels in arms against the government of the United States, or as a member of Congress, or as a judge of a court, or as a cabinet officer, or as a foreign minister, or as a commissioner, or as a consul of the so-called Confederate States. Indeed, many other official positions he is charged in the alter- native with holding, the district attorney evidently regarding him as a person of so much consequence that he must have been called to some official position by the Confederate government, in which he gave aid and comfort to the enemies of the United States, and therefore his right, title, and estate in the property was forfeited, and ought to be condemned. Publication of monition followed, and no one appearing to answer, judgment by default was entered, declaring that the lots of land, the property of Conrad, were condemned as forfeited to the United States, and a decree for their sale was entered. In the writ issued to the marshal and in his deed of sale, the lots are de- scribed as the property of Conrad. Under the act of Congress no other interest than that of Conrad was forfeited, and no other interest was sold. It was for his alleged offences that the libel was filed and the forfeiture sought. It was undoubt- edly in the power of Congress to provide for the confiscation of the entire property as being within the enemy's country, without restricting it to the estate of the defendant, but Congress

did not see fit to so enact; and as we said in speaking of the proceedings in this case: "The court cannot enlarge the operations of the stringent provisions of the statute. The plaintiff had notice of the character and legal effect of the decree of condemnation when he purchased, and is therefore presumed to have known that if the alleged offender possessed no estate in the premises at the time of their seizure, nothing passed to the United States by the decree or to him by his purchase." *Burbank* v. *Conrad*, 96 U. S. 291.

This would be true with reference to any layman who might have been the purchaser, but with special force may it be applied to the plaintiff, who as the district attorney directed the seizure and conducted the proceedings to the decree.

It turned out in other litigation that at the time of the seizure Conrad possessed no estate in the premises. He had transferred the property by a public act of sale before a notary on the 31st of May, 1862, before the confiscation statute was passed, which applied only to the property of persons thereafter guilty of acts of disloyalty and treason. In express terms it withheld from its application the property of persons who before its passage may have offended in those respects. Conrad's power of disposition when he made his sale to his sons was not impaired by anything he may previously have done. This was expressly adjudged by this court in the case of Conrad, the son, against the plaintiff. 96 U. S. 279.

But because of the general language used in the description of the property in the libel of information and in the deed of the marshal, it is contended that something more than the estate of the offender Conrad was warranted by the United States to the purchaser, and the warranty having failed, that he is entitled to a return of the purchase money; but this position is without even plausible foundation. As already stated, the plaintiff was presumed to know the law on the subject, and that by his purchase under the decree he could only acquire such an estate as the alleged offender possessed, to hold during the offender's life; and that if the offender had no estate none was forfeited to the United States, or sold under the decree of the court. So no 1 lse assurance could have been made to the purchaser which

could be suggested as a possible ground for the return of the money; nor could there have been any mistake of fact which would be recognized as a ground for relief even in equity, for the fact suggested as having been misunderstood was declared by the law.

Besides, the title to the property sold under judicial process is not warranted by the party obtaining the judgment of the court. Whatever title the law gives, the purchaser takes, no more and no less; and he must govern himself accordingly. Any different rule prevailing on this subject in Louisiana or any other State by statute cannot change the position of the United States with respect to judicial sales in proceedings instituted by them.

Nor is this position at all affected by the doctrine that upon the reversal of a judgment under which a sale has been had, the purchaser is entitled to a return of his money. There has been no reversal of the judgment in the confiscation proceedings against Conrad. On the contrary, it has been affirmed.

*Judgment affirmed.*