In Re: Robert Keet Minto, v. Dorothy H. Minto, John T. Pierpont, Sheriff of Greene County, Movant-Respondent, v. Cecil Stumph, Appellant.—217 S. W. (2d) 729.

Springfield Court of Appeals. October Session, 1948.

Opinion filed March 7, 1949.

*Lincoln, Lincoln, Whitlock & Haseltine*, of Springfield, for appellant.

*Joseph N. Brown, Arch A. Johnson, Sam M. Wear, William A. Wear*, and *Wear & Wear* for respondent.

BLAIR, J.—This is a proceeding under Section 1367 and Section 1368, Revised Statutes of Missouri, for 1939.

On May 23, 1945, plaintiff, in the case of Minto vs. Minto, 207 S. W. (2d) 843, subsequently decided in favor of the bank, defendant, filed a motion in the trial court for an order on the Sheriff of Greene County, Missouri, for the sale of the interest of Dorothy H. Walter, previously Dorothy H. Minto, in the property later described. The facts are very clearly stated by the trial judge, and we reproduce his finding of facts, without change, as follows:

### "FINDING OF FACTS.

"January 18, 1947, Plaintiff Robert K. Minto recovered a judgment against Dorothy Minto in the amount of $4002.67. March 29, 1947, a general execution was issued on said judgment and delivered to the Sheriff. On April 12, 1947, the Sheriff levied upon all the right, title and interest of Dorothy Minto in and to the following described real estate, to-wit:

"'That part of the SW¼ of the SE¼ of Sec. 4, Twp. 29, Range 21, lying south and east of Pearson Creek, containing 1½ acres.'

"Thereafter, the Sheriff caused a notice of sale to be duly published for twenty-one days, giving notice that on May 20, 1947, he would sell for cash all the right, title and interest of Dorothy Minto in and to the above described real estate. On May 20th, at 2:00 P. M., the usual time of holding Sheriff's sales, and at the place named in the notice, J. Will Webb, a deputy sheriff, conducted the sale in the absence of the Sheriff. After announcing that he was about to hold a sale, the published notice was read by Lottie Epperson, another deputy sheriff and clerk in the Sheriff's office. After the reading of the notice, Webb said he was selling all the right, title and interest of Dorothy Minto in and to the said land, and asked for bids. The first bid was $100.00, made by Arch A. Johnson, an attorney for the plaintiff, R. K. Minto. Other bids were made by respondent herein, Cecil Stumph, and others, until the sum of $1125.00 was reached. That was Stumph's bid, and being the last and best bid, the land was struck off and sold to Stumph. Stumph thereupon gave the Sheriff his check for $1125.00. There were no representations made at the sale by anyone as to the nature of Dorothy Minto's inter-

est in the land. The sale was concluded and the check given about 2:15 P. M. The bank closed at 3:00 P. M. The Sheriff did not present the check for payment till the next morning, by which time Stumph had stopped payment, and has since refused to pay it.

"Thereafter, the Sheriff advertised a second sale, which was duly held, at which sale all the right, title and interest of Dorothy Minto in and to said land was sold to another party for $50.00. Thereupon the Sheriff filed his motion for summary judgment against Stumph for $1075.00, the difference between his bid and the amount realized on the resale, under Secs. 1367 and 1368, R. S. 1939.

"Respondent Stumph makes no contention of any irregularity or invalidity in the proceedings above recited, but he seeks to justify his refusal to pay his bid on the sole ground that Dorothy Minto, at the time of the sale, had no right, title or interest in said land; that the Sheriff had nothing to sell and nothing was sold or bought, and hence there was no consideration or a total failure of consideration for his bid, and that he made his bid in the mistaken belief that the title was in Dorothy Minto. On this question the facts are:

"On April 5, 1945, the land in question belonged to Claud and Sylvia Hawley. On that day they made a deed whereby they conveyed it to one Jack Walter, which deed has never been recorded. On that date, April 5th Dorothy Minto was the wife of Plaintiff R. K. Minto, and Jack Walter had a wife living in Memphis, Tenn. Dorothy Minto had a divorce suit pending in which she obtained a decree of divorce the next day, April 6th. Walter was also divorced at some time thereafter. Dorothy Minto and Jack Walter were at the time, April 5th planning to marry when their respective divorces were granted.

"The Hawley place, the 1½ acres above described, was listed for sale with a real estate broker named Johnson. "Several days before April 5th, Johnson took Dorothy out to see the place with the idea of selling it to her. She said she liked it, and at a later time she took Walter out to see it. He also liked it. As a result they decided to buy it. Hawley furnished an abstract of title which was turned over to Wm. A. Moon, an attorney, for examination. Moon was at the time attorney and legal adviser to both Dorothy and Walter.

"On April 5th, Moon having approved the title, the Hawleys went to his office to execute a deed, which they did. Dorothy was there, but Walter was not. The deed was drawn by Moon, and Jack Walter was named as grantee. Moon paid the Hawleys in cash $3400.00 ($100.00 having been previously paid). Moon testified that the entire purchase price, $3500.00 was paid by Jack Walter, that Walter had previously paid $100.00 to bind the bargain, and on April 5th gave him (Moon) $3400.00 to pay the balance. In explanation of why the deed was not recorded, Moon says that Walter then had a suit pending in Memphis with his wife and did not want the records to show that

he had any property. Moon also says that a week or ten days previously Walter had showed him some checks he had totaling more than $5000.00. Another fact of some significance is that on April 4th, the day before the transaction with the Hawleys, Dorothy Minto, using a power of attorney previously given her by her husband R. K. Minto, had withdrawn $4002.67 from her husband's bank account. Moon says that Dorothy turned this money over to him to keep for her some two weeks later and that he returned it to her in August.

"Soon after April 5th, when Hawleys' deed was made, Dorothy moved into the place and lived there for two months or more. About July 1, 1945, Walter, having been divorced from his wife in Memphis, was married to Dorothy Minto.

"Now coming back to May 20, 1947, the day of the execution sale, Stumph went to the Sheriff's office to get some information about the land and the sale, said he had looked at the property and liked it, and asked what it was worth. Arch A. Johnson, an attorney for R. K. Minto, the plaintiff, was there and told him that it had been listed at $6000.00, that whoever bought it at the sale would be buying a lawsuit, that he (Johnson) was going to bid on it, and if he bought it he would bring a suit to clear the title. Soon thereafter the sale was held, with the result that the land was struck off to Stumph at $1125.00."

We cannot possibly state the facts any more clearly. Indeed, there is very little dispute about the facts in this proceeding.

We are also satisfied that the trial judge reached the correct conclusion in his opinion, although there are more authorities than the trial judge discussed, and other cases, cited by appellant in his brief, which we feel we should notice. The trial judge does not notice them, at least at any length, in his opinion. With this explanation, we feel justified in setting out and adopting the opinion of the trial judge, in full, and it follows:

### Opinion

"The question decisive of this case is: As between the Sheriff holding a sale under execution, and the bidder at such sale, does the rule of caveat emptor prevail, absent any fraud on the part of the Sheriff? After rather exhaustive examination my conclusion is that by the great weight of authority the question must be answered in the affirmative.

"We can at the outset eliminate the element of fraud. There was no evidence of any representation by anyone as to the interest of the defendant Dorothy Minto had in the property sold, except the statement Arch A. Johnson made to Stumph, "that the purchaser would be buying a lawsuit, and that if he (Johnson) bought it, he would bring a suit to clear the title. Far from being an assurance of title, it was a red flag of warning that the interest of Dorothy, which was to be sold, was doubtful and it would require litigation to perfect it.

If Stumph thought Johnson was merely trying to discourage other bidders, he has no one to blame but himself.

"That the rule of caveat emptor applies to execution sales, and the buyer takes all the risk of the title, takes whatever the execution defendant may have, no more, no less, seems firmly settled in this and other jurisdictions, though there seems to be some lack of harmony in the decisions, and I find it hard to reconcile the reasoning of them. Without trying to do so, I shall mention some of them.

"McLean v. Martin, 45 Mo. 393, cited by respondent Stumph. At an execution sale the Sheriff, through a mistake in the description, sold land that did not belong to the defendant. The purchaser paid his bid, and failing to get the defendant's land, brought suit to recover the amount of his bid, not from the Sheriff, but from the execution defendant. The price he paid had been paid over by the Sheriff to the plaintiff in the execution and credited on his judgment. The Court held that the defendant, having lost nothing by reason of the sale, but having profited to the extent of the credit given on the judgment against him, was liable to the bidder. The Court held that under the circumstances the rule of caveat emptor did not apply.

"Wichinsky v. Cavender, 72 Mo. 193, was a case in all respects like the McLean case above, and the Court applied the same rule.

"In Sandrowski v. Sandrowski, 93 S. W. (2d), 81, it was held that the rule of caveat emptor did not apply where the sale itself was void because the commissioner making the sale "had no authority to act, he having failed to comply with the order of the Court to give a bond. No question is raised here as to the authority of the Sheriff to hold the sale.

"Respondent Stumph also in his brief quotes from Corpus Juris Secundum under the title "Judicial Sales", Vol 50, page 667, to the effect that the power of the Court to compel the purchaser to complete his purchase should be carefully exercised and only where the case is free from reasonable doubt. However, the same authority, on the same page (667) says:

"'where the rule of caveat emptor applies, it has been held that unless the purchaser buys under the assurance that he is to receive a perfect title, or unless there is fraud or excusable mistake, the purchaser will not be relieved from his purchase because the title to the property is defective or has failed, where the proceedings would pass the title if the debtor had it.'

"And the same authority further says, under the title 'Executions', 33 Corp. Juris Sec., page 468:

"'The rule of caveat emptor applies to execution sales, and the purchaser acquires only such interest or title as the judgment-debtor possessed. In accordance with this rule the purchaser cannot set up as a defense to his liability for the purchase money defects in the debtor's title — — — — or the absence of any title

in the debtor, — — — In the absence of fraud on the part of the officer a misrepresentation as to the facts on the part of the purchaser will not relieve him of his bid.'

"In Whaples v. U. S. 110 U. S. 630, 28 L. Ed. 272, the Supreme Court of the United States held that where an execution sale passed no title because the property had been conveyed by the defendant before the law creating his liability was enacted, the purchaser at such sale was without remedy, that the rule of caveat emptor applied; that he was presumed to know the law, and that by his purchase he could only acquire such estate as the defendant had, and that if the defendant had no estate, none was sold under the decree.

"In Touge v. Radwell, 156 Atl. 814 (Pa. Sup. Ct.) it was held the purchaser at a Sheriff's sale takes only such title as 'the defendant had, no more, no less.' The purchaser cannot refuse to pay because the defendant in the execution had no title to the land levied on.

"Kreps v. Webster, 277 Pac. 471 (Colo. 1929) was a case in all respects like this. There was a judgment against a defaulting bidder at an execution sale for $900.00, the difference between his bid and the amount realized at a resale. Defendant sought to avoid liability because the defendant in the execution had no title and he was mistaken as to the character of the sale. This was held to be no defense. The Court said:

" 'In an execution sale where the proceedings have been regular and valid, the purchaser takes whatever title or interest the defendant may have, and he takes the risks as to the defects in that title. If the defendant has a good title, he takes it, if a partial title he gets that, if no title he gets nothing. He takes his chances on the title the defendant has, and if that proves worthless, he is without remedy. It behooves him to acquaint himself with the title before buying and his complaint afterward will not be heeded.'

"This opinion contains a very good review of authorities.

"Coming to Missouri cases in point:

"In Cashion v. Faina, 47 Mo. 133, the purchaser at partition sale gave a note for part of the purchase price, and then refused to pay the note on the ground that there was no title to part of the land sold, and that he had been evicted by court judgment. It was held that the failure of the title was no defense. The sale conveyed only such title as the parties to the proceeding had, whatever it might be.

"In Schwartz v. Dryden, 25 Mo. 572, a similar case, there was no title to a part of the land sold. Held, the purchaser could not be relieved of his bid or any part of it. See also Stephens v. Ells, 65 Mo. 456. McNamee v. Cole, 134 Mo. App. 266, where similar situations existed and the rule of caveat emptor was held to apply.

114

"Other cases holding emphatically that the rule of caveat emptor does apply to execution sales, although no title or a defective title passed, are:

"Talley v. Schlatity, 180 Mo. 231
Chilton v. Harris, 179 Mo. App. 267
Brightwell v. Bank, 109 Fed. 2d. 271

"Even if a total failure of consideration will relieve the purchaser of his liability on his bid, has Stumph shown such a failure? Failure of consideration is an affirmative defense and the burden of proof is on the purchaser to show it. Has he shown that Dorothy Minto had no interest in this land? The circumstances surrounding the purchase of the land from Hawley in my opinion make a cause to be submitted to the trier of the facts, if and when the matter ever comes to trial.

"At the time of that purchase Dorothy was the wife of R. K. Minto, the plaintiff. The day before the purchase she had wrongfully withdrawn from her husband's account $4002.67. She was planning to marry Jack Walter as soon as they were both free. She had as much reason as Walter did to have no property of record in her own name. She first looked at the property with a view to buying it, expressed her approval of it, and later took Walter out to look at it. After it was bought she moved into it and lived there for some months. She was present when the deal was closed. Walter was not. It is true that Moon testified Walter handed him the $3400.00 to pay to Hawley for the deed, but where Walter got the money Moon does not know. That Dorothy may have given it to him for the purpose of buying the place, which she liked and wanted, out of the $4002.67 she had the day before taken from her husband's account, is an inference as reasonable as any other. There is more than a scintilla of evidence that Dorothy was the real purchaser, and in my opinion the purchaser of Dorothy's interest at the execution sale has a submissible case. Certainly Stumph has not sustained the burden of proving that Dorothy had no interest in the land.

"However, regardless of whether Dorothy had any interest or not, my conclusion is that the cases Cashion v. Faina, 47 Mo. 133, and Schwartz v. Dryden, 25 Mo. 572, are controlling authority in this case, and are supported by the great weight of authority in other states; that Stumph bought at his own risk only such interest as Dorothy Minto had, and he cannot be now heard to complain of the title."

The trial judge made no comment upon the testimony of Dorothy H. Walter, or that of attorney Wm. A. Moon, who represented her. He based his opinion entirely upon the proposition that, even if Dorothy H. Walter had no interest whatever in the property described, still appellant is liable, since the bid of $1125.00 by appellant, was for whatever interest, if any, Dorothy H. Walter had in such property.

Even though the trial judge based his conclusion .solely on the ground, stated in his opinion, we cannot refrain from remarking that there must have been some warning to appellant and the other bidders at such sale, that the interest of Dorothy H. Walter in such property was at least questionable, since the value of said property, if hers without loubt, was reasonably worth several times the amount appellant, or any other bidder, was willing to bid therefor.

Appellant first says, "The Court erroneously failed to relieve appellant from his bid by reason of mutual mistake of fact and unfairness."

The case thirdly stated is Heath v. Daggett (1855) 21 Mo. 69. The action in that case was by the sureties, who had signed a bond to protect the marshal in selling property that was claimed by another than the execution debtor. The defense of the marshal in that case, for the proceeds of such sale, has no tendency to relieve the appellant in this case.

The nearest that case comes to helping appellant here, is what Judge Leonard said in his opinion, to wit:

"It is well settled, as a general principle, that an officer is not bound to go on with an execution against property, after ascertaining that it belongs to another, * * *."

In that case, the property of one, not the execution debtor, was wrongfully levied upon and sold. The marshal was held not to be bound to pay over the proceeds of such wrongful sale to those who had signed his bond in order to have him make the sale.

In Hall v. Giesling, 178 Mo. App. 233, 165 S. W. 1181, it was said: "But under our statute the bidder renders himself liable when he makes the bid."

In McNamee v. Cole, 134 Mo. App. 266, 114 S. W. 46, barely mentioned by the trial judge, the appellate court said:

"The statutes provided then, as they do now, if a bidder at an execution sale refused to pay the amount of his bid for property struck off to him, the officer making the sale might again sell to the highest bidder as though no previous sale had occurred, and, if a loss was occasioned,·recover the amount of it on motion before a court or justice in a summary way."

None of the cases cited by appellant, and either not noticed or discussed at any length by the trier of the facts, seem to us to have the slightest tendency to support the first contention of error in the appellant's brief.

The second contention of error made by appellant, is as follows:

"The Court erroneously failed to relieve appellant from his bid by reason of total failure of consideration."

Appellant cites 33 C. J. S., page 600; that authority said:

"A purchaser praying relief on the ground that the property belongs to a stranger must make out a clear case; doubt and uncertainty

as to the interest of the execution defendant will not entitle him to relief."

In his opinion the trial judge, in this assignment of error, discussed five or six cases now cited by appellant. The case of Stephens v. Ells, 65 Mo. 456, was not discussed by him at length. Judge Napton there said:

"There is no doubt that partition sales, like other judicial sales, carry no warranty with them, and that the maxim of *caveat emptor* applies to the purchaser."

Even that case, now cited by appellant in his brief, surely does not help appellant in the least, and is really against his contention of error in this case.

It seems useless to us to discuss cases in support of appellant's third contention of error or to set out such contention at length. Appellant cites a number of cases and the statute. He cites Section 1336, R. S. Mo. 1939. The fifth sub-section thereof, is as follows:

"All real estate whereof the defendant, or any person for his use, was seized, in law or equity, at the time of the issue and levy of the attachment, or rendition of the judgment, order or decree whereon execution was issued, or at any time thereafter."

This provision of the statute is sufficient to justify the sale by the sheriff.

Merely because the sheriff does not know the facts, about such claimed unknown interest, does not make such interest "nonexistent." In view of Section 1336, R. S. Mo. 1939, we think it is useless to notice any further authorities or cases cited by appellant under his third assignment of error.

The trial judge, however, did not notice or consider any of the cases, now cited by appellant under his fourth point. That assignment of error is as follows:

"The Court erroneously held that appellant, Cecil Stumph, failed to prove a total failure of consideration in the sheriff's sale."

Adams v. Adams, 348 Mo. 1041, 156 S. W. (2d) 610, is cited by appellant. That was a trust case. Certainly, the burden of showing that the money advanced was a trust fund, rather than a loan, was upon the one claiming that it was a trust.

H. B. McCray Lumber Co. v. Standard Const. Co., 285, S. W. 104, cited by appellant, was a mechanics lien case. There was no discussion in that case as to what party must show that no consideration existed.

We have looked in vain for anything in Schwind v. O'Halloran, 346 Mo. 486, 142 S. W. (2d) 55, cited by appellant, having the slightest tendency to show what the Supreme Court has held, relative to the burden of showing failure or want of consideration.

In Transamerican Freight Lines v. Art Marble Co., 236 Mo. App. 272, 150 S. W. (2d) 547, cited by appellant, it was merely held that

defendant had the burden of submitting substantial evidence on his counterclaim. That is entirely different from the burden of showing that the consideration has failed.

So we have concluded that, even though the trial judge improperly held that the rule of *caveat emptor* applied to appellant, said appellant has not submitted any authority that the trial judge improperly held that the burden of proof (that is the duty of going forward with the evidence) was upon appellant to show that there was no consideration for his bid, or that such consideration subsequently failed entirely.

A short search had disclosed to us that our Supreme Court, in a case of partial failure of consideration, has held:

"Under Rev. St. 1899, Sec. 645, providing that, in a suit on a writing for the payment of money, defendant may prove a want of failure of consideration in whole or in part, evidence of a partial failure of consideration is admissible under a plea of a total failure of consideration." National Tube Works Co. v. Ring Refrigerating & Ice Mac. Co., 201 Mo. 30, 98 S. W. 620. A careful reading of the entire opinion in that case discloses that the quotation above, taken from the syllabus, is amply supported by the opinion itself.

We hold, with the trial judge, that the failure, or want of consideration, must be shown by the one asserting it. We also hold that the rule of *caveat emptor* applies to appellant in this case.

The judgment accordingly is affirmed. It is so ordered. *Vandeventer, P. J.,* and *McDowell, J.,* concur.