## HOFFELD *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 318. Argued April 16, 1902.—Decided June 2, 1902.

The statute of June 16, 1880, providing that where entries of public lands have been canceled, the Secretary of the Interior shall refund the purchase money to the entryman, his heirs or assigns, is limited to such entryman, his heirs or voluntary assigns, and does not apply to one who purchased the interest of the entryman upon an execution sale against him.

THIS was a petition of J. Henrietta Hoffeld, executrix of the estate of Rudolph Hoffeld, deceased, for the repayment to her

by the United States, under the act of June 16, 1880, 21 Stat.
287, of the purchase money for one hundred and sixty acres of
coal lands, the entry of which had been canceled by the Com-
missioner of the General Land Office on January 27, 1895, over
eight years after the purchase was made, and more than seven
years after Hoffeld had bought the land.

The purchase from the United States was originally made by
other parties for a consideration of thirty-two hundred dollars.
These parties had conveyed the lands to the Ohio Creek Anthra-
cite Coal Company, against which company a judgment had been
obtained, and a sale made November 10, 1887, to Rudolph Hof-
feld, purchaser under the execution. Petitioner was his exec-
utrix. Several years after the sale the Commissioner of the
General Land Office found that an error had been committed,
in the allowance of the original entry upon the affidavit of an
attorney, in the absence of the original entrymen. He there-
upon exacted an affidavit of these entrymen, but as two out of
the four were dead, and the other two could not be found, it
was impossible to comply with the requirement of the Com-
missioner, who canceled the purchase, as above stated.

The Court of Claims made a finding of facts substantially as
above stated, and decided, as a conclusion of law upon such
facts, that the claimant had no right to recover, and the peti-
tion was therefore dismissed.

*Mr. Robert Andrews* for Hoffeld.

*Mr. George Hines Gorman* for the United States. *Mr. As-
sistant Attorney General Pradt* was on his brief.

Mr. Justice Brown delivered the opinion of the court.

This case depends upon the construction given to section 2
of the act of June 16, 1880, 21 Stat. 287, which reads as fol-
lows:

"In all cases where homestead or timber-culture or desert-
land entries or other entries of public lands have heretofore or
shall hereafter be canceled for conflict, or where, from any

cause, the entry has been erroneously allowed and cannot be confirmed, the Secretary of the Interior shall cause to be repaid to the person who made such entry, *or to his heirs or assigns,* the fees and commissions, amount of purchase money, and excesses paid upon the same, upon the surrender of the duplicate receipt and the execution of a proper relinquishment of all claims to said land, whenever such entry shall have been duly canceled by the Commissioner of the General Land Office."

In the case under consideration, the entry had been made May 28, 1886, by Harry Jones, J. L. Cole, Charles L. Weaver and Samy Perri, through William Hinds, acting in their behalf under a power of attorney, paying therefor to the United States the sum of thirty-two hundred dollars. Section 32 of the Coal Land Regulations requires the entryman to certify in an affidavit that he makes the entry in his own right and for his own benefit, and not for the benefit of any other person. This affidavit was not made by the entrymen themselves, but by Hinds, as their attorney in fact. It was held to be insufficient by the General Land Office, and the local land offices were required to notify the claimants to that effect, and to require a new affidavit. Owing to the death of two of the entrymen and the impossibility of finding the two others, the affidavit could not be procured, and the entry was canceled by the Land Office, January 24, 1895. Previously thereto, and on May 29, 1886, the entrymen had conveyed the land to the Ohio Creek Anthracite Coal Company, against whom a writ of attachment was issued, a judgment obtained, and an execution issued, levied upon this tract of land, which was sold by the sheriff to Rudolph Hoffeld for the sum of seventy-five dollars, and on January 10, 1897, Hoffeld made application for repayment of the purchase money under the provisions of the above act.

The act requires that where, from any cause, the entry has been erroneously allowed and cannot be confirmed, repayment shall be made of the consideration to the entryman, or to his *heirs or assigns,* and the only question for our consideration is, whether the purchaser of the original rights of an entryman at an execution sale against him or his grantee can be said to be an "assign" within the meaning of the act.

"Assigns," or, as the word is more commonly spelled, "assignees," are of two classes, depending upon the manner of their creation : first, voluntary assigns, who are created by act of the parties; and, second, assignees created by operation of law. Whether in a given case an assignee belongs to the first or second class depends upon the purpose for which he was created, the object to be attained by his creation, and the language of the statute or other instrument from which he derives his powers. A voluntary assignee is ordinarily invested with all the rights which his assignor possessed, with respect to the property; while the rights of an assignee by operation of law are such only as are necessarily incident to the complete possession and enjoyment of the things assigned. A voluntary assignee takes the property with all the rights thereto possessed by his assignor, and if he has paid a valuable consideration, may claim all the rights of a *bona fide* purchaser with respect thereto. Upon the other hand, an assignee by operation of law, as, for instance, a purchaser at a judicial sale, takes only such title as the execution debtor possessed at the time of sale. *The Monte Allegre*, 9 Wheat. 616. The doctrine of *caveat emptor* applies in all its rigor, and the buyer cannot set up the rights of a *bona fide* purchaser, even against an unrecorded deed. Thus in *Burbank* v. *Conrad*, 96 U. S. 291, it was said of property condemned and sold as enemies' property under the confiscation act, that "the United States acquired by the decree, for the life of the offender, only the estate which at the time of the seizure he actually possessed; not what he may have appeared from the public records to possess, by reasons of the omission of his vendees to record the act of sale to them ; and that estate, whatever it was, for that period passed by the marshal's sale and deed; nothing more and nothing less. The registry act was not intended to protect the United States in the exercise of their power of confiscation from the consequences of previous unrecorded sales of the alleged offender." It was held in connection with the same transaction that the purchaser was not even entitled to a return of his purchase money. *Waples* v. *United States*, 110 U. S. 630.

The case of the *City of Norwich*, 118 U. S. 468, though

arising under the maritime law, is pertinent in this connection. This was a petition under the limited liability act, Rev. Stat. sec. 4285, which declares that if the owner of a vessel elect to take the benefit of the act, it shall be a sufficient compliance with the law "if he shall transfer his interest in such vessel and freight, for the benefit of the claimants, to a trustee," who becomes in reality an assignee for the benefit of creditors under the act. It was held that the word "interest" was intended to refer to the extent or amount of ownership which the party had in the vessel and freight, and that whatever the extent or character of his ownership might be, the amount or value of that interest was to be the measure of his liability. It was also held that his transfer of such interest under the law did not operate as an assignment of his insurance upon the vessel, which was a collateral contract, personal to the insured, but not conferring upon him any interest in the property ; in other words, the contract of insurance does not attach itself to the thing insured or go with it when it is transferred. See cases cited 118 U. S. 494.

Upon the other hand, an assignee by operation of law may, under certain circumstances, have greater rights than a voluntary assignee. Thus in *Erwin* v. *United States*, 97 U. S. 392, it was held that the act of February 26, 1853, (Rev. Stat. sec. 3477,) nullifying and avoiding all transfers and assignments of any claim upon the United States, applied only to cases of voluntary assignments of demands against the government, and that it did not embrace cases where there had been a transfer of title by operation of law. " The passing of claims to heirs, devisees or assignees in bankruptcy are not within the evil at which the statute aimed ; nor does the construction given by this court deny to such parties a standing in the Court of Claims."

In *Goodman* v. *Niblack*, 102 U. S. 556, this doctrine was applied to a general assignment for the benefit of creditors.

Referring now to the statute of June 16, 1880, 21 Stat. 287, we find that its requirements are, first, that the entry must have been canceled for conflict, or from some cause must have been erroneously allowed ; second, that repayment must be made to the person who made the entry, or to his heirs or as-

signs; and, third, that such repayment should only be made upon the surrender of the duplicate receipt and the execution of a proper relinquishment of all claims to the land. The last requirement is strong evidence tending to show that voluntary assigns are only contemplated by the act, as they would naturally take the receipt with the deed of the land and be in a condition to relinquish all claims thereto, while an assign by operation of law would have no means of compelling a delivery of the receipt to him. The purchaser at an execution sale would only take the actual title of the owner to the land itself, unaccompanied by any collateral claims or rights incident to the acquisition of the land. In this respect he stands much as an assignee under the limited liability act, who, as above stated, takes the interest of the owner in the vessel and freight, but not his interest in a collateral contract of insurance. The contract evidenced by the statute is really a contract of indemnity, and provides, much like a policy of insurance, that if the owner lose his property he shall recover what he paid for it. We see no reason why the general rule above stated, that a contract of insurance does not accompany a transfer of the thing insured, does not apply to this statute.

It will be readily seen that complicated questions might arise in case the entryman should make a voluntary conveyance of the land accompanied by a surrender of his duplicate receipt, or should assign his receipt to another than the execution purchaser. The requirement that the receipt shall be surrendered is as peremptory as the requirement that the person demanding repayment shall be an heir or assign of the original entryman. The petition in this case contains no averment of petitioner's readiness to surrender the duplicate receipt, or any excuse for a failure to do so, but simply sets forth the title of Rudolph Hoffeld as purchaser under an execution sale upon the judgment against the Ohio Creek Anthracite Coal Company, although the court finds as a fact that it appeared from an affidavit that the duplicate receipt had been destroyed by fire. As bearing upon the equities of the case it is pertinent to remark that Hoffeld bought the property in question for a recited consideration of $75, but that under the statute he claims the whole

sum of $3200 which was paid to the United States at the original entry of the land. He thus by an expenditure of $75 recovers $3200, while neither the original entrymen who paid the $3200 nor their assignee, the Coal Company, recover anything. Inasmuch as, in the absence of a statute, there could be no recovery of the purchase money, *Waples* v. *United States,* 110 U. S. 630, one who seeks to take advantage of it must bring himself clearly within its equity as well as within its letter, and must show himself entitled not only to the land itself, but to everything which the statute has annexed thereto as an incident. The right to a return of the purchase money is in no sense an incident to the land, and did not pass to the purchaser upon the sale under the execution.

On the whole we are of opinion that the petitioner has not shown herself an assign of the original entryman or otherwise entitled herself to the benefit of the statute, and the judgment of the Court of Claims dismissing her petition is, therefore,

*Affirmed.*