## UNITED STATES *v.* COMMONWEALTH TITLE INSUR- ANCE AND TRUST COMPANY.

### APPEAL FROM THE COURT OF CLAIMS.

No. 172.  Submitted March 3, 1904.—Decided April 4, 1904.

A mortgagee who has foreclosed his mortgage and purchased the property
mortgaged at sheriff's sale under a decree of the court is an assignee of
the owner of the land within section 2 of the act of June 16, 1880, 21
Stat. 287.

Where there is a finding by the Court of Claims that a relinquishment was
made "as required by the rules and regulations of the Land Office," this
Court will presume that the Secretary did his duty and received all re-
ceipts and whatever was necessary to revest title in the United States to
the land cancelled.

The facts are stated in the opinion of the court.

*Mr. Assistant Attorney General Pradt,* with whom *Mr. George
Hines Gorman* was on the brief, for the United States:

The facts found by the court below do not support the judg-
ment rendered.  The findings of fact by the court of claims
are a special verdict and determine all matters of fact like the
verdict of a jury, *United States* v. *Smith,* 94 U. S. 214; *Stone*

v. *United States*, 164 U. S. 380, and, like every other special verdict, they must contain of and in themselves, without the slightest reference to the testimony, or by any process of piecing together, every essential fact necessary for the resultant judgment. The special verdict is one by which the facts are found and the law is submitted to the judges. A special verdict, in order to sustain the judgment, must pass upon all the material issues made in the pleading, so as to enable a court to say, upon the pleadings and verdict, without looking at the evidence, which party is entitled to a judgment. *Ward* v. *Cochran*, 150 U. S. 507, 608; *Prentiss* v. *Zane's Administrator*, 8 How. 370, 483; *Hodges* v. *Easton*, 106 U. S. 408; *Newbegin* v. *The National Bank*, 26 U. S. App. 712.

The surrender of the duplicate receipt is, by the statute, made an essential prerequisite of the repayment of the purchase money, *Hoffeld* v. *United States*, 186 U. S. 273, 278, and the court nowhere found that the duplicate receipts were ever in the possession of the appellee or ever surrendered by it, as required by the statute.

This mortgagee is not an assignee of the original entryman and is not entitled to the repayment of this purchase money under the provisions of the act of June 16, 1880. The land in question being situated in the State of Montana, the mortgage given upon it is to be construed and dealt with in accordance with the laws of that State on that subject. See Montana Annotated Civil Code, vol. 1, §§ 3810 *et seq.*

*Mr. William R. Andrews* for appellee:

The allowance of the claim by the Secretary of the Interior is conclusive in the absence of fraud and mistake. *Woolner* v. *United States*, 13 C. Cl. 362; *First Nat. Bank* v. *United States*, 15 C. Cl. 228; *United States* v. *Savings Bank*, 104 U. S. 728; *Dugan* v. *United States*, 34 C. Cl. 469; *United States* v. *Kaufman*, 96 U. S. 567; *United States* v. *Am. Tobacco Co.*, 166 U. S. 468; *Medbury* v. *United States*, 173 U. S. 492.

Assuming, however, that the allowance of the Secretary is

subject to review, the appellee is the assignee of the original entryman within the meaning of the act. See *Hoffeld* v. *United States*, 186 U. S. 273, holding that the "assigns" contemplated by this act are "voluntary assigns." See also *Barnard* v. *Wilson*, 74 California, 519; *Champion* v. *Hinkle*, 45 N. J. Eq. 164; *Taylor* v. *Kearn*, 68 Illinois, 344.

Relating back to the date of the mortgage the effect is the same as though the mortgagor had then transferred the certificate by absolute assignment.

The appellee is a voluntary assignee of the original entryman, and as such is entitled to the repayment of the purchase money. *Vroom* v. *Ditmas*, 4 Paige Ch. 526; *Poweshiek County* v. *Dennison*, 36 Iowa, 248; *De Haven* v. *Laudell*, 31 Pa. St. 124; *Ritger* v. *Parker*, 8 Cush. (Mass.) 149; Kerr's Supp. to Wiltsie on Mortgage Foreclosures, sec. 582; 1 Wiltsie on Mortgage Foreclosures, p. 697; 2 Jones on Mortgages, p. 548.

The Secretary of the Interior has uniformly held that the right of repayment under section 2, act of June 16, 1880, is restricted to assignees of the land, and does not extend to persons holding an assignment of the claim for the money paid on the entry. Instructions, 21 Land Decisions, 366. This uniform construction of the statute by the executive officer charged with its execution is entitled to great weight. *Edwards* v. *Darby*, 12 Wheat. 210; *United States* v. *Philbrick*, 120 U. S. 52; *United States* v. *Healey*, 160 U. S. 136; *H. & D. R. R. Co.* v. *Whitney*, 132 U. S. 366.

The provision of the act itself, which requires the execution of a relinquishment of all claim to the land, clearly shows that the assignees entitled to repayment are the grantees of the land. It would be an absurdity to require a mere personal assignee, who never claimed any interest in the land, to relinquish all claim to the land.

MR. JUSTICE McKENNA delivered the opinion of the court.

The question involved in this case is whether a mortgagee

who has foreclosed his mortgage and purchased the property mortgaged at sheriff's sale under a decree of the court is an assignee of the owner of the land within section 2 of an act of Congress approved June 16, 1880.    21 Stat. 287.

The section reads as follows:

"Sec. 2. In all cases where homestead or timber-culture or desert-land entries or other entries of public lands have heretofore or shall hereafter be cancelled for conflict, or where from any cause the entry has been erroneously allowed and cannot be confirmed, the Secretary of the Interior shall cause to be repaid to the person who made the entry, or to his heirs or assigns, the fees and commissions, amount of purchase money and excesses paid upon the same, upon the surrender of the duplicate receipt and the execution of a proper relinquishment of all claims to said land, whenever such entry shall have been duly cancelled by the Commissioner of the General Land Office, and in all cases where parties have paid double minimum price for land which was afterwards found not to be within the limits of a railroad land grant, the excess of one dollar and twenty-five cents per acre shall in like manner be repaid to the purchaser thereof or to his heirs or assigns."

It is provided by the rules of the General Land Office that application for repayment under this section shall be accompanied by a duly executed deed, where the title has become a matter of record, relinquishing to the United States all right and claim to the land under the entry or patent.

The case is this: In 1888 one Amanda Cormack made settlement upon one hundred and sixty acres of land in the Helena land district of Montana, and paid $200, being at the rate of $1.25 per acre.    Subsequently, May 10, 1890, she borrowed from the Northwest Guarantee Loan Company $300, and gave her note therefor, due in three years, and secured the note by a mortgage on the land.    On January 9, 1890, the said company assigned the note and mortgage to the Commonwealth Title Insurance Company, the appellee.    The instruments were all duly recorded.

July 8, 1890, the General Land Office informed the local office that 120 acres of the land entered had been recommended and selected for reservoir purposes, and on August 16, 1894, the Commissioner of the General Land Office cancelled all of the land entered except the N. W. ¼ of the N. E. ¼ of section 28, as being in conflict with the Box Elder Reservation system. Subsequently appellee brought suit to foreclose said mortgage, and such proceedings were had therein that on August 16, 1897, the mortgaged property was duly sold to appellee for $200, and a sheriff's deed duly executed and delivered to appellee.

Thereafter appellee applied to the Commissioner of the General Land Office for the repayment to him of the sum of $150, being $1.25 per acre paid by Amanda Cormack for the 120 acres cancelled. The application was refused by the Commissioner. The Secretary of the Interior reversed the ruling and allowed the repayment upon the relinquishment by appellee of all claim to the land so cancelled. The relinquishment was duly made and the claim was transmitted to the Treasury Department for final settlement. The Auditor of that Department for the Interior Department passed the claim, but the decision was reversed, and the claim was finally disallowed by the Comptroller.

The Court of Claims rendered judgment for appellee for the amount claimed, to wit, $150. 37 C. Cl. 532.

Section 2 of the act of 1880 was considered by this court in *Hoffeld* v. *United States*, 186 U. S. 273. We there distinguished between a voluntary assignment and one created by operation of law. The former "takes the property," it was observed, "with all the rights thereto possessed by his assignor, and if he has paid a valuable consideration, may claim all the rights of a *bona fide* purchaser with respect thereto."

Is a mortgagee within the principle? A brief definition of a mortgage under modern law is not easy to make. At common law a mortgage was a conditional conveyance to secure the payment of money or the performance of some act, to be void upon such payment or performance. By more modern law and

under the statutes of many States a mortgage is a mere lien upon land. Its dominant attribute is security, but nevertheless it must be regarded as "both a lien in equity and a conveyance at law." Pomeroy, § 1191. The interest of a mortgagee in the land is therefore conveyed to him by the mortgagor, and even if under the laws of Montana a mortgage is primarily security for a debt and creates a lien only it is a lien which may become the title. The decree of the court conveying the title is, of course, the act of the law, but it is the act of the law consummating the act of the mortgagor. And the sale and deed relate to the date of the mortgage, conveying the title which was then possessed by the mortgagor. And for the purpose of this case we need go no farther in elaboration of the legal attributes of a mortgage. We regard the word "assigns," as used in the statute, as one who derives from the original entryman by the voluntary act of the latter. We regard also the right conferred by the statute as attaching to the land— a kind of warranty upon the part of the United States to restore the consideration paid for the land if the contingencies expressed in the statute occur.

It is insisted, however, that all of the conditions of the repayment have not been complied with; that there has not been a surrender of the duplicate receipt as provided by the statute. *Hoffeld* v. *United States, supra.* There is certainly no direct finding to that effect. There is a finding, however, that the Secretary of the Interior ordered repayment "on the relinquishment by the claimants of all claim to the land so cancelled," and a further finding that the relinquishment was made "as required by the rules and regulations of the Land Office."

We must presume that the Secretary did his duty and exacted the performance of all the statute required, and infer, therefore, that he had received the duplicate receipt, and all that was necessary to fulfill the conditions of the statute and revest the title in the United States to the land cancelled.

*Judgment affirmed.*