## In re EVANS.

(District Court, D. Idaho, S. D.   October 4, 1916.)

1. PUBLIC LANDS ⬡➡140—DESERT LANDS—ENTRIES.

An entry under the desert land laws, on which final proof has not been made, is property subject to the payment of the entryman's debts, and on his bankruptcy may be subjected to payment of such debts, whether the bankruptcy be voluntary or involuntary, for under Act March 3, 1891, c. 561, 26 Stat. 1095, and Act March 28, 1908, c. 112, 35 Stat. 52 (Comp. St. 1913, §§ 4681–4683), the entry may be assigned before perfected,

and assignments may be voluntary or involuntary, while the purpose of the desert land laws is not, as in the case of homesteads, to encourage citizens to establish themselves, but requires the payment of substantial consideration.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 377–382; Dec. Dig. ☞140.]

2. BANKRUPTCY ☞143(1)—PROPERTY SUBJECT TO PAYMENT OF DEBTS.

Under Bankruptcy Act July 1, 1898, c. 541, § 70a, subds. 1, 5, 30 Stat. 565 (Comp. St. 1913, § 9654), declaring that the trustee succeeds to all documents relating to property and to property which prior to the filing of the petition could have been by any means transferred, a desert entry, though not completed, is subject to sale by the trustee in bankruptcy, for it might be assigned, and the bankrupt had a right which will be protected by law.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 191; Dec. Dig. ☞143(1).]

3. BANKRUPTCY ☞4—STATUTES—CONSTRUCTION.

The Bankruptcy Act should receive a construction which will effectuate its purpose, and not permit debtors to retain their property free from the claims of creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 3, 4; Dec. Dig. ☞4.]

4. PUBLIC LANDS ☞140—DESERT ENTRIES—LIABILITY FOR ENTRYMAN'S DEBTS.

By express statute, homestead, pre-emptions, and timber culture entries pass on the death of the entryman before patent to his heirs, not by succession or inheritance, but as purchasers from the United States. Rev. St. § 2448 (Comp. St. 1913, § 5098), declares that, where an entryman dies before patent is issued, the patent title shall inure to and become vested in the heirs, devisees, and assigns of such deceased patentee, as if the patent had been issued to the entryman during life. *Held*, that while the statute is broad enough to include desert entries, it manifestly refers only to the death of the entryman after final proof, etc., and does not indicate an intention on the part of Congress to exempt desert entries from payment of the entryman's debts.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 377–382; Dec. Dig. ☞140.]

In Bankruptcy. In the matter of the bankruptcy of Herbert L. Evans. On petition to review orders of referee, authorizing and confirming a sale of lands on which the bankrupt had entered under the desert entry laws. Orders affirmed.

J. W. Stauffer and D. A. Dunning, both of Boise, Idaho, for bankrupt.

D. L. Young, of Boise, Idaho, for trustee.

B. F. Neal, of Boise, Idaho, pro se.

DIETRICH, District Judge. [1] On June 16, 1916, Herbert L. Evans was adjudged a voluntary bankrupt. In his petition he stated that he was "willing to surrender all his property for the benefit of his creditors, except such as is exempt by law." He was at the time entryman under public land laws of the United States of desert entry No. 011795, embracing 160 acres of land in the Boise land district, in Idaho. He had not yet made final proof. The referee, adopting the

view that the entry was subject to administration, directed the trustee to sell it. The bankrupt is here seeking a review of the proceedings authorizing and confirming the sale, upon the theory that a desert entry prior to final proof does not constitute a part of the insolvent entryman's estate. The question, of course, involves a consideration of the provisions of both the Bankrupt Act and the desert land laws. No decided case has been found directly in point.

In the first place, there are obvious distinctions to be made between a desert entry and a homestead entry. A homestead is in the nature of a bounty, and, having in mind that the underlying purpose of the Homestead Act is to encourage citizens to secure for themselves and their families homes upon the public domain, Congress prescribed appropriate conditions and limitations: A certain period of actual residence is required, transfers are prohibited, the entry is protected against the claims of creditors, and in case of the death of the entryman it passes, not to the creditors, but to those for whose benefit the bounty is intended, namely, the family of the deceased. An entirely different purpose underlies the desert land laws. The title thus acquired is not a gratuity. In the purchase price of $1.25 per acre the government directly receives a substantial consideration, if not the full value of the lands as they exist in their natural condition. And, of course, it receives the further indirect benefit arising from the reclamation of unproductive lands. In administering these laws it does not concern itself primarily with the contribution which the entry may make to the well-being of the entryman and his family. No condition of residence or tenure is imposed, nor is there any provision safeguarding the entry, either in the hands of the entryman or of his heirs, against the claims of his creditors. The government requires the payment of the purchase price and a measure of reclamation before it will pass title, but whether the money is paid and the acts of reclamation performed by the entryman, or by his successor in interest, is to it a matter of indifference. The entry may be assigned at any time, and the assignee acquires all the rights of the entryman. Amendatory Act of March 3, 1891, 26 Stat. 1095, and the further Amendatory Act of March 28, 1908, 35 Stat. 52. The entryman thus has a vendible interest, which is always of substantial value, and which, shortly before final proof, is likely to be worth but little less than the complete equitable and legal title would be. Why should such a property right not be appropriable to the payment of the entryman's debts? Without strain, the language of the law is comprehensive enough to permit of such appropriation:

"'Assigns,' or as the word is more commonly spelled, 'assignees,' are of two classes, depending on their creation: First, voluntary assignees, who are created by act of the parties; and, second, assignees created by operation of law." Hoffeld v. United States, 186 U. S. 273, 22 Sup. Ct. 927, 46 L. Ed. 1160.

I am aware that in Young v. Trumble, 35 Land Dec. 515, the Honorable Secretary of the Interior, while recognizing the validity of a transfer effected through a judicial proceeding in the nature of a mortgage foreclosure, declined to uphold a sale upon execution in an ac-

tion at law, but I am unable to appreciate the validity of this distinction. The question there and the one here are substantially different from that which was involved in the Hoffeld Case, supra, upon which much reliance seems to have been placed. In the Hoffeld Case it appears to have been assumed that the execution sale operated to transfer to the purchaser the entryman's right in the entry and the lands covered thereby, and nothing else is here involved. But, however that may be, under the principle that a valid transfer may be effected by foreclosure proceedings, which was recognized in the Young-Trumble decision, and unequivocally enunciated in the case of United States v. Commonwealth T. I. & T. Co., 193 U. S. 651, 24 Sup. Ct. 546, 48 L. Ed. 830, a sale and transfer in a bankruptcy proceeding, at least in a voluntary proceeding like this, should be upheld. Administration in bankruptcy proceeds in a court of equity, where there is ample power to require the bankrupt to deliver up all title papers, and hence in such a proceeding one of the objections on which the Hoffeld decision seems to have been predicated is easily obviated; and, in a voluntary proceeding, the bankrupt expressly agrees to turn over all his property to his creditors. In order to avail himself of the high privilege of securing a discharge from all of his debts, the bankrupt here expressed his willingness "to surrender all his property for the benefit of his creditors, except such as is exempt by law," and it is conceded that the entry in question is not exempt by law. Hence, as in the mortgage foreclosure, the sale by the trustee merely consummated the entryman's voluntary act of assignment.

[2] Putting aside this consideration, and assuming that a voluntary proceeding in bankruptcy is not different from an involuntary one, the bankrupt urges that he has no vested interest, but only an inchoate right in the entry. We must deal with the substance of things, and not with the mere terms by which they may be called without changing their real nature. If by an inchoate, nonvested right it is meant that the entryman's right is such that against his will, and while he is fully and seasonably complying with the conditions prescribed by law, the entry may be taken from him without compensation and without due process, either by private individuals or by the government itself, I am unable to adopt the view. The entryman is not vested with the title, to be sure, but he is vested with the right to acquire the title by complying with the prescribed conditions. Moreover, the Bankruptcy Act is very comprehensive in the terms it employs to describe that which is subject to administration. The trustee succeeds—

"to all (1) documents relating to * * * property; * * * (5) property which prior to the filing of the petition he [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him." Bankruptcy Act, § 70a, subds. (1), (5).

It is not necessary that the property or right be subject to judicial process. Was this desert entry "property," and could the entryman by any means have transferred it? That he could have transferred it by voluntary assignment is conceded, and that it is of substantial value both to the entryman and to his transferee, and is "property" in a very real sense, seems scarcely open to question.

[3, 4] Finally there is the contention that the purpose of Congress not to make such an entry appropriable to the payment of the entryman's debts during his lifetime should be inferred from the fact that it is provided that upon his death it shall go not to his estate, but to his heirs. That it goes to the heirs and not to the estate seems to be the holding of the Idaho Supreme Court in Powell v. Powell, 22 Idaho, 534, 126 Pac. 1058, but with all due respect, I am not convinced of the correctness of the conclusion there reached. It is said by the court that:

"While no case has been brought to our attention involving the right and title to a desert entry where the title has been perfected and patent has issued subsequent to the death of the entryman, our attention has been called to cases involving homestead, pre-emption, and timber culture entries [citations omitted], and it has been uniformly held, so far as we are advised, that in all such cases the heirs take title—not by succession or inheritance, but as purchasers from the United States."

But such succession is expressly provided for by law in the case of homestead, pre-emption, and timber culture entries. For homesteads see Revised Stat., §§ 2291, 2292 [Comp. St. 1913, §§ 4532, 4543]; for pre-emption see section 2269; for timber culture entries see Act of June 14, 1878, §§ 2, 4, 20 Stat. 113. Whereas there are no such provisions relative to a desert entry. Standing alone, it is true the language of section 2 of the Timber Culture Act is not free from ambiguity, but clearly under section 4 the entry is exempt from claims against the estate, for such claims would necessarily arise before the death of the entryman, and hence by hypothesis before the issuance of final certificate, and therefore could not becomes charges against the entry.

Section 2448 of the Revised Statutes, cited by the Idaho court, while broad enough to cover a desert entry, seems to be applicable only to cases where the entryman dies after final proof and before patent. And besides it in no wise supports the proposition that the entry passes to the heirs free from the debts of the deceased, for it provides that the patent title—

"shall inure to and become vested in the heirs, devisees, or assignees of such deceased patentee as if the patent had issued to the deceased person during life."

Now manifestly if patent to a desert entry issues to the entryman during his lifetime, upon his death the land, if still held by him, will become vested in his heirs or devisees, subject, however, to the payment of his debts, and therefore subject to the administration of his estate, and that is precisely the contention which the trustee here makes touching the status of this entry.

In conclusion it may be suggested that it would be an anomalous condition, and it would tend to bring the bankruptcy law into disrepute, if, as would be entirely possible under the contention which the bankrupt makes, a debtor could, while residing upon and claiming the exemption of his homestead, put upon his desert entry improvements of great value, and, after incurring large indebtedness for that purpose, resort to the bankruptcy court just before it becomes necessary for him to submit his final proof, and in that way secure a discharge from

his debts while withholding property which, if sold, would realize an amount sufficient for their payment in full. It is easy to conceive of an entry of this character having a salable value of $25,000 or $30,-000, and yet if the present contention is sustained, the bankrupt could, while possessed of such an estate in addition to his exemptions, demand that he be discharged from his debts, and thus leave his creditors, less affluent than he, to swallow their chagrin and charge their claims to profit and loss. In the absence of the most cogent reasons the law ought not to be so construed as to make possible such an incongruous, if not monstrous, result.

The orders complained of will be affirmed.