**In the Matter of NORTH AMERICAN DEALER GROUP, INC., a/k/a North American Dealers Services, Inc., Debtor.**

**Bankruptcy No. 180–07958–16.**

United States Bankruptcy Court, E. D. New York.

Feb. 16, 1982.

Stroock, Stroock & Lavan, New York City, for trustee Daniel McColley; Robin Keller Dunne, New York City, of counsel.

Bressler, Lipsitz & Rothenberg, New York City, for respondents The Estate of Harold B. Snyder, Sr., United Counties Trust Co., Lindabury, McCormick and Estabrook, Esqs., and Francis X. McCormick; David Olesker, New York City, of counsel.

MANUEL J. PRICE, Bankruptcy Judge.

This is a motion made by Daniel McColley, the trustee of the debtor herein (The TRUSTEE), enjoining the Estate of Harold B. Snyder, Sr. (The ESTATE), its executor, United Counties Trust Company (UNITED), Lindabury, McCormick and Estabrook, Esqs. (The LAW FIRM), the attorneys for the estate and Francis X. McCormick, Esq. (McCORMICK), a member of that firm, "from commencing or continuing any act of any nature which interferes with the trustee's disposition" of a piece of property owned by the debtor on which the estate holds a mortgage. The motion was argued before me and memoranda have been submitted setting forth the contentions of the parties.

In order to place this proceeding in proper perspective, a short synopsis of the events leading up to the motion is appropriate.

On December 24, 1980, the debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Reform Act of 1978 (The CODE), 11 U.S.C. § 1101 *et seq.* On February 12, 1981, the case was converted to one under Chapter 7, 11 U.S.C. § 701 *et seq.* A meeting of creditors was held pursuant to Section 341 of the Code, 11 U.S.C. § 341, on April 21, 1981, at which Daniel McColley was elected trustee, and I signed an order to that effect on April 22, 1981 in which I fixed his bond at $100,000. He qualified by filing his bond on April 29, 1981 and entered upon his duties of liquidating the estate.

Among the debtor's assets was an office building which had been occupied by it at 245 Birchwood Avenue, Cranford, New Jersey (The PROPERTY). The property had been purchased by the debtor from Harold B. Snyder, Sr., and it had executed a purchase money mortgage agreement and

promissory note in his favor on February 1, 1978 in the principal amount of $412,000 with interest at 9% per year for twenty-two years which contains the following provisions:

"10. EVENTS OF DEFAULT:

"Unless Mortgagee consents thereto, the occurrence of any of the following events shall constitute an event of default:

\* \* \* \* \* \*

"(c) The institution of proceedings by or against Mortgagor under any bankruptcy or insolvency law, or any law for the benefit of creditors or relief of debtors, provided, however, the institution of proceedings against Mortgagor shall not be an event of default if such proceedings shall be discharged or dismissed within sixty (60) days after the commencement date thereof; or

"(d) The passing of title to the Premises to, or possession of the Premises by a receiver, trustee or assignee for the benefit of creditors.

\* \* \* \* \* \*

"12. REMEDIES:

"If an event of default occurs, Mortgagee may:

"(a) Declare the Debt to be immediately payable, and thereupon the same shall become immediately payable. . . ."

On July 18, 1981, United, by letter, informed the attorneys for the trustee that the payments under the mortgage for the months of March, April, May, June and July, 1981 had not been made. It advised them that if the payments were not received within fifteen days, the mortgage would be in default and that it would declare the entire amount thereof due without further notice. It also stated that an event of default under the terms of the mortgage had occurred by reason of the fact that the debtor had filed a petition for relief in this court on December 24, 1980. The attorneys for the trustee replied to the letter on July 20, 1981. They advised United that the mortgage arrears would be paid and that the mortgage would be kept current. Their letter also stated that it was their opinion that the Code invalidated the default provisions referred to in United's letter.

On July 22, 1981, McCormick, on behalf of the law firm, wrote to the trustee's attorneys that he had examined the mortgage note and mortgage and that he could find no provision in either of them "which permits the mortgagee to accelerate the mortgage balance in the event of transfer of title."

The trustee, in accordance with his attorneys' letter of July 20, 1981, paid the March, April, May, June and July, 1981 payments and has paid each subsequent monthly payment required by the mortgage so that there are no arrears and it is current.

During the course of his duties in liquidating the assets of the estate, the trustee has been attempting to sell the property subject to the estate's mortgage. He has been advised by potential purchasers that they have been informed by McCormick, his law firm and/or United that the mortgage is in default or that there will be a default upon the transfer of title. The trustee has obtained an offer of $580,000 for the property subject to the mortgage and he now seeks to restrain the respondents from interfering with that offer or any others.

The trustee contends that under Sections 363(b) and (*l*) of the Code, 11 U.S.C. §§ 363(b) and (*l*), he has the right to sell the property, other than in the regular course of business, subject to the mortgage, notwithstanding the provisions of paragraphs 10(c) and (d) and 12(a), thereof *supra*, provided he furnishes adequate protection to the estate in accordance with Section 363(b). He further contends that the respondents are interfering with that right by advising prospective purchasers that the mortgage is in default by reason of the filing of the petition for relief.

It is the estate's position that the mortgage is an executory contract which the trustee has not assumed or rejected within sixty days as required by Section 365(d)(1)

of the Code, 11 U.S.C. § 365(d)(1), and that it is deemed rejected. It therefore contends that it has the right to "seek foreclosure of the Property in accordance with the agreement of the parties" (Respondents' Memorandum of Law, p. 3).

Section 365(d)(1) of the Code, 11 U.S.C. § 365(d)(1) provides:

"(d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected."

The question to be determined is whether the mortgage executed by the debtor is an executory contract which the trustee was required to affirm or reject within sixty days of the order for relief.

A mortgage is defined in Black's Law Dictionary, Fifth Edition (1979) as follows:

"A mortgage is an interest in land created by a written instrument providing security for the performance of a duty or the payment of a debt."

Ballantine's Law Dictionary, Third Edition (1969) defines it:

"[I]n the modern sense [as] a security or lien for the performance of an obligation."

The mortgage in question provides that it is "[t]o secure the payment of the Debt, as [t]herein defined...." The definition of the "Debt" set forth in the mortgage is:

"(1) The principal sum of FOUR HUNDRED TWELVE THOUSAND ($412,000.00) DOLLARS advanced and/or to be advanced by Mortgagee to Mortgagor, with interest thereon at the rate specified in, and represented by, Mortgagor's Promissory Note, bearing even date herewith, payable to the order of Mortgagee.

"(2) All amounts from time to time paid or expended by Mortgagee under Section 15 with interest thereon at the rate of twelve (12%) per cent per annum, and

"(3) All other amounts which Mortgagor and Mortgagee may agree are to be secured hereby, with interest thereon at the rate or rates agreed upon...."

(Exhibit A attached to Respondents' Memorandum of Law)

In the case of *U. S. v. Commonwealth Title Insurance & Trust Co.*, 193 U.S. 651, 24 S.Ct. 546, 48 L.Ed. 830 (1904), the Supreme Court provided the following definition, at pages 655–56, 24 S.Ct. at page 547:

"At common law a mortgage was a conditional conveyance to secure the payment of money on the performance of some act, to be void upon such payment or performance. By more modern law and under the Statutes of many states a mortgage is a mere lien upon land. Its dominant attribute is security...."

Since the property is located in New Jersey, the definition of a mortgage enunciated by its courts is pertinent. The following definition is found in the case of *Vineland Savings & Loan Association v. Felmey*, 12 N.J.Super. 384, 79 A.2d 714, 717–18 (1950):

"In this State our courts, regarding more the essence than the form of a mortgage transaction, have laid down the principle that the mortgage does not vest in the mortgagee an immediate estate in the lands, with the right of immediate possession, defeasible upon the payment of the mortgage money, but merely gives him a right of entry on breach of the condition, in which event his estate has all the incidents of a common law title, including the right of possession subject to the equity of redemption, and, meanwhile, the mortgagor is treated as the owner of the lands for all purposes. *In New Jersey, a mortgage is essentially security for the payment of the debt.* Sears, Roebuck & Co. v. Camp, 124 N.J.Eq. 403, 1 A.2d 425, 118 A.L.R. 762 (E. & A. 1938); *Farrow v. Ocean County Trust Co.*, 121 N.J.L. 344, 2 A.2d 352 (Sup.Ct.1938); *Riverside Building & Loan Ass'n v. Bishop*, 98 N.J.Eq. 508, 131 A. 78 (Ch. 1925). And so the mortgagor, until a default and action by the mortgagee,

would continue to be regarded as the owner of the fee title." (emphasis mine). *See* also *Garnick v. Serewitch*, 39 N.J.Super. 486, 121 A.2d 423, 428 (1956).

■ The respondents contend that the mortgage is an executory contract since it "contains substantial obligations to be performed by the mortgagor in the future." They refer to the requirement that the mortgagor keep the property in good repair and comply with all applicable laws. They have cited a series of cases in which executory contracts are defined. *Not one of the cases cited by them refers to a mortgage on real estate as an executory contract*, nor has the court's research revealed any such definition.

On the contrary, Professor Vern Countryman defines executory contracts in the context of bankruptcy in an article entitled "Executory Contracts in Bankruptcy: Part I" published in 57 Minn.L.Rev. 439 *et seq.* as follows at page 460 as:

"a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other."

He then proceeds, at page 472, to define agreements which are *not* executory, by comparing a mortgage on real property to a contract for the sale of property:

"In the great bulk of ... cases, where the credit is extended by a bank or other third-party lender who takes a mortgage from the vendee, the mortgagee-lender has performed its obligation when it makes payment to the vendor or otherwise advances the purchase money. Even in 'title theory' jurisdictions, no formal conveyance of title from mortgagee to mortgagor is required if the mortgagor repays the debt at maturity. *Hence the mortgage should not be viewed as an executory contract which the bankruptcy trustee of either the mortgagee or the mortgagor can reject.*

"*This analysis of the purchase money mortgage of realty which is equally applied to the nonpurchase money mortgage after the mortgagee has advanced all he is obligated to advance has apparently appeared self-evident to the parties involved. There seems to be no recorded instance of attempted assumption or rejection by a receiver for or a trustee of either mortgagor or mortgagee.*" (emphasis supplied).

It is apparent from the following quotation that a mortgage on real property is not an executory contract which must be assumed or rejected by a trustee under Section 365(d)(1) in order to protect the estate's equity therein, rather, in the language of Professor Countryman, at page 473:

"[I]n the event of the mortgagor's bankruptcy, his trustee is left with the mortgagor's right under State law to save his equity either by redeeming the property from the mortgage, *selling the property subject to the mortgage*, or claiming the equity from the proceeds of a liquidation of the property in the bankruptcy proceeding or at foreclosure sale. Or, if the mortgagor's equity has no value, his trustee may abandon the property." (emphasis mine)

As Judge Learned Hand said in the case of *In re Humeston*, 83 F.2d 187 (2d Cir. 1936), at page 189:

"We cannot see by what warrant the mortgagees challenge the sale of the equity. It is true that they are general creditors as well as lienors, but as creditors they can have no interest in preventing a sale and as mortgagees it cannot affect their remedies in any way whatever."

Since I have found that the mortgage is not an executory contract which required an assumption or rejection by the trustee pursuant to Section 365(d)(1), let us examine the provisions of the Code which are applicable to the "EVENTS OF DEFAULT" set forth in paragraph 10(c) and (d) *supra*, thereof.

■ The Code provides that once the debtor files a case under Section 301, an estate is created, under Section 541(a)(1), which consists of "all legal or equitable

interests of the debtor in property . . . ." Section 541(c)(1) provides that:

"[A]n interest of the debtor in property becomes property of the estate under subsection (a)(1) . . . of this section notwithstanding any provision—

"(A) that restricts or conditions transfer of such interest by the debtor; or

(B) *that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.*" (emphasis added)

Section 363 of the Code defines the rights and powers of the trustee with respect to the use, sale or lease of the property of the estate which was defined in Section 541 *supra*. Subsection (b) of Section 363 provides that:

"The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

Subsection (*l*) provides that:

"(*l*) The trustee may use, sell, or lease property under subsection (b) or (c) of this section, . . . *notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of a taking (sic) possession, by a trustee in a case under this title . . . and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interests in such property.*" (emphasis added)

So far as the trustee is concerned, the sections of the Code cited above vitiate the provisions of paragraphs 10(c), (d) and 12(a) of the mortgage so that, as to him, there have been no events of default pursuant thereto. He has complied with all other provisions of the mortgage, particularly with regard to the monthly payments thereon which were accepted by United on behalf of the estate. The mortgage is therefore current in all respects.

While this motion was pending, the trustee entered into a contract for the sale of the property with the entity which had made the offer of $580,000 referred to on page 4. On January 18, 1982, I signed an order scheduling a "Hearing to Sell Real Property" on February 8, 1982 at 10 a.m. The order provided that notice by first class mail be given to all creditors and parties in interest and that notice thereof be published in the Sunday *New York Times* and in the daily *Newark Star Ledger*.

Objection to the sale was filed by the estate on the same ground as that urged on this motion, namely, that the mortgage was an executory contract which had not been assumed by the trustee in accordance with Section 365(d)(1) of the Code, 11 U.S.C. § 365(d)(1); that it therefore was conclusively deemed to have been rejected; that, in accordance with its terms, it was in default and that the property was subject to the rights of United "to accelerate the mortgage debt and to foreclose on the subject property."

On the morning of February 8, 1982, prior to the commencement of the sale, I dismissed the objection of the estate after informing its counsel that this opinion would set forth my reasons for the ruling. I then conducted the sale at which there was spirited bidding which resulted in the sale of the property for $610,000, subject to the mortgage, to an entity other than the original offeror. Since the balance due on the mortgage is approximately $380,000, this means that the debtor's estate will be enhanced to the extent of approximately $230,000 which the trustee will ultimately distribute to its creditors.

In view of the fact that the sale of the property was successfully concluded, it would appear that the motion to enjoin the respondents from interfering with it is moot. However, this decision is dispositive of the objection to the sale filed by them.

IT IS SO ORDERED.