**In the Matter of Charles James LAWSON, Debtor.**

**TAMBAY TRUSTEE, INC., Plaintiff,**

**v.**

**FLORIDA PROGRESS CORPORATION, Defendant.**

**Bankruptcy No. 85–1786.**
**Adv. No. 86–108.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Nov. 6, 1986.

Jary Nixon, Tampa, Fla., for plaintiff.

John W. Olson and William D. Mitchell, Tampa, Fla., for defendant.

Douglas M. Bagge, Corporate Counsel, St. Petersburg, for Florida Progress Corp.

Paul S. Horn, Washington, D.C., for I.R.S.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case, and the matter under consideration is a Motion for Summary Judgment filed in the above-captioned adversary proceeding by Florida Progress Corporation (Florida Progress), a Defendant named in the complaint. The complaint was filed by Tambay Trustee, Inc., (Trustee), who seek to recover the interest in a certain pension and retirement fund of Charles James Lawson, the Chapter 7 Debtor (Debtor). The fund is being administered by Florida Progress Corp., the Defendant named in the above-captioned adversary proceeding. It is the contention of Florida Progress that there are no genuine issues of material facts and it is entitled to a judgment as a matter of law based on the record which reveals the following undisputed facts:

At the time relevant to this controversy the Debtor was and still is an employee of Florida Power Corporation (Florida Power), a public utility corporation. Florida Progress is the parent corporation of Florida Power and is the administrator of an Employee Stock Ownership Plan (ESOP) maintained by Florida Progress for the employees of Florida Power. The controversy centers around the Debtor's interest in ESOP, which consists of 587.588 common stock of Florida Power.

Charles James Lawson filed his petition for relief under Chapter 7 of the Bankruptcy Code on July 9, 1985. On February 28, 1986, the Trustee filed a Complaint for Turnover of Property and sought an order directing Florida Progress to turn over to the Trustee the Debtor's interest in ESOP. On April 7, 1986, Florida Progress filed its Motion for Summary Judgment. On May 19, 1986, this Court entered an Order on Motion for Summary Judgment and granted the oral motions of the Trustee and Florida Progress to invite the United States of America (Government) to participate in this adversary proceeding as amicus curae; the Government was invited to file an amicus brief within 30 days. The Order deferred ruling on the Motion for Summary Judgment for 30 days or such time as may be extended in order to permit the Government to file a brief. The reason the parties agreed to invite the Government's participation is because of the contention advanced by Florida Progress, that if the Trustee prevails, this would expose not only the ESOP to a very substantial tax liability, but all the participants in the ESOP as well.

The ESOP is a tax-qualified employee benefit program that provides its participants, including the Debtor, with significant retirement and tax benefits. In order to qualify for tax exemption, the ESOP was designed to comply with 26 U.S.C. § 401(a)(13), and § 11.04 restricts the alienation of plan benefits to the beneficiaries (Defendant's Exh. # 2) and also contains an anti-assignment provision.

Section 6.01 of the ESOP provides that the shares in a participant's account may be distributed only upon retirement, death or termination of employment (Defendant's Exh. # 1) with one exception. The exception is contained in Section 6.04 of ESOP (Defendant's Exh. # 1), which provides that stocks attributable to contributions made prior to January 1, 1983, and which have been allocated for at least 84 months prior to the date of such withdrawal may be distributed to the participating employees. Under this exception, as Florida Progress concedes, as it must, 56 shares of the Debtor are available for immediate distribution on demand by the Debtor under the terms of the ESOP but for the effect of a bankruptcy "ipso facto" clause included in the basic document creating ESOP. Specifically, Article X(a) of the Trust document provides that in the event of the involvement of any participant in ESOP in a bankruptcy case, the trustee in charge of ESOP has the discretion to terminate a participant's bene-

fit and to hold or to apply the participant's interest for the benefit of the participant, or for his family, or his dependants (Defendant's Exh. # 2).

Based on the foregoing undisputed facts, Florida Progress contends first that by virtue of Article X(b) of the trust document, Florida Progress has the discretion to terminate all benefits of the Debtor because of his bankruptcy and may either hold or apply the Debtor's interest for the benefit of the Debtor or for his family or his dependents; second, Florida Progress contends that by virtue of § 541(c)(2), the Debtor's interest in ESOP is not "property of the estate," and therefore, is not subject to turnover provisions of § 542. This last contention is based on the proposition urged by Florida Progress that because ESOP is, by virtue of the anti-alienation provision, in fact, a spendthrift trust, and therefore, excluded from the estate and not subject to administration by the Trustee by virtue of the specific provision of § 541(c)(2) of the Bankruptcy Code.

■ Considering the contentions of Florida Progress seriatim, it should be stated at the outset that forfeiture clauses triggered by bankruptcy commonly referred to as "ipso facto" clauses are unenforceable in bankruptcy. This subject is expressly dealt with by § 541(c)(1)(B) of the Code which provides:

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

Thus, it is evident that the "ipso facto" clause is of no effect, and presents no obstacles to the Trustee's right to the Debtor's shares provided, of course, that the shares are "properties of the estate" and not excluded and immunized from administration by the trustee by virtue of 541(c)(2) of the Bankruptcy Code. This view has been generally recognized and accepted by the courts in considering the enforceability of "ipso facto" clauses in bankruptcy. *In re Threewitt*, 20 B.R. 434, 9 BCD 38 (Bankr.D.Kan.1982); *see also In re North American Dealer Group, Inc., a/k/a North American Dealer Services, Inc.*, 16 B.R. 996, 8 BCD 940 (Bankr.E.D.N. Y.1982). *See generally* 4 *Collier on Bankruptcy* ¶ 541.22 at 541–100 (15th ed. 1981). It is clear that the language of the statute is nothing more than a clear statement of the intent of Congress, which was not to recognize and permit enforcement of "ipso facto" forfeiture clauses. *See H.R.Rep. 95–595, 95th Cong., 1st Sess. 369 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.*

This leaves for consideration the application of § 541 and § 541(c)(2) to the undisputed facts as appear from the record of this case. Under § 541 of the Bankruptcy Code the concept of "property of the estate" is no longer proscribed by the limitations found in its predecessor, § 70a of the Bankruptcy Act of 1898. There is no doubt that the Bankruptcy Code was intended to create a more uniform and comprehensive concept of the term "property of the estate". *See S.Rep. No. 95–989, 95th Cong., 2d Sess. 82 (1977), reprinted in 1978 U.S. Code Cong. & Ad.News 5787, 5868; H.Rep. No. 95–595, 95th Cong., 2d Sess. 175 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News. 5963, 6136.* Under § 541 of the Bankruptcy Code, all property in which a debtor has any "legal or equitable interest" at the time of bankruptcy comes into the estate. 11 U.S.C. § 541(a)(1). This is so notwithstanding any provision [except as recognized in subsection (2)] that restricts or conditions transfer of such interest by the debtor. 11 U.S.C. § 541(c)(1)(A).

There is hardly any doubt that when one considers § 541 alone, the Debtor's interest in ESOP is clearly property of the estate unless the exception set forth in § 541(c)(2) governs, which provides as follows:

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable *under applicable non-bankruptcy law* is enforceable in a case under this title. (emphasis added)

As noted *supra*, the ESOP contains an anti-alienation and anti-assignment clause designed to qualify it as tax exempt under 26 U.S.C. § 401(a)(13). Thus at first blush, the stock held by Florida Progress appears to come under the exception set forth in § 541(c)(2) of the Bankruptcy Code. The answer to the question, however, is not that simple and cases dealing with this issue are far from being in agreement.

■ Several cases have held that the Trustee cannot reach the Debtor's interest in funds held in an ERISA type plans, which are also tax exempt and contain similar anti-alienation and anti-assignment clauses by virtue of the exclusion set forth in § 541(c)(2). *In re Pruitt*, 30 B.R. 330 (Bankr.D.Colo.1983); *In re Threewitt*, 24 B.R. 927 (D.Kan.1982); *In re Holt*, 32 B.R. 767 (Bankr.D.Tenn.1983); *In re Rodgers*, 24 B.R. 181 (D.Ariz.1982). The holdings of these cases are based on a broad interpretation of the reach of § 541(c)(2) by recognizing assignment and transfer restrictions under general federal non-bankruptcy law in addition to recognizing the same under traditional state trust laws. Some of these courts noted that the language of § 541(c)(2) is clear and unambiguous and since it does *not* contain any reference to the term "spendthrift", the traditionally accepted definition of the term "spendthrift" has no relevance to the applicability to the exclusion set forth in § 541(c)(2). Based on this, these courts concluded that the subsection should be read to include any and all trusts which bar creditors from reaching the debtor's interest. Because these courts held that ERISA's transfer restrictions were enforceable under federal non-bankruptcy law, these courts took the position that they need not consider the nature of the trust under local law.

Another line of cases have rejected this reasoning and held that § 541(c)(2) was intended to protect only a debtor's interest in traditional spendthrift trusts. *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re Goff*, 706 F.2d 574 (5th Cir.1983): *In re DiPiazza*, 29 B.R. 916 (Bankr.N.D.Ill.1983); *In re Graham*, 24 B.R. 305 (Bankr.N.D. Iowa 1982), *aff'd*, 726 F.2d 1268 (8th Cir. 1984). For instance, the Fifth Circuit in *Goff, supra*, determined that the concept of property of the estate under the Bankruptcy Code was intended to have a broad scope which would be frustrated if ERISA's assignment and transfer restrictions were applied with a "sweeping brush." *Goff, supra* at 987; *see also In re Nichols*, 42 B.R. 772, 775 (Bankr.M.D.Fla. 1984). Furthermore, the Court in *Goff*, found that ERISA did not constitute a federal exemption within the meaning of § 522(b)(2)(A). As a result, the Court in *Goff, supra*, found it unlikely that Congress intended to remove ERISA benefits from the reach of creditors through § 541(c)(2), especially when it clearly could have done so in § 522 by exempting such benefits.

Having considered the authorities cited on the subject, this Court is satisfied that the reasoning of the Fifth Circuit in *Goff, supra*, is more persuasive and, therefore, rejects the holding in *Threewitt, Holt*, and *Pruitt, supra*, and agrees with the proposition that Congress intended to limit the exclusion set forth in § 541(c)(2) to "trusts" which have been traditionally recognized under local law to qualify as true "spendthrift trusts." It follows that the next inquiry must be addressed to the issue of whether the ESOP and the Trust established under it would qualify as a spendthrift trust under Florida law and thus be excepted from the estate pursuant to § 541(c)(2).

■ Spendthrift trusts are designed to provide a fund for the maintenance of the beneficiary while at the same time securing it against the beneficiary's own improvi-

dence and incapacity. *Croom v. Ocala Plumbing & Electric Co.*, 62 Fla. 460, 465, 57 So. 243, 244 (1911). "Because the purpose of a spendthrift trust is to protect the beneficiary from himself and his creditors, such a trust fails where the beneficiary exercises absolute dominion over the property of the trust." *Lichstrahl, supra* at 1490 (*citing Croom, supra*, 62 Fla. at 466, 57 So. at 244–45); *see also In re Guernsey*, 54 B.R. 68, 69 (Bankr.S.D.Fla.1985). Section 11.04 of ESOP provides in pertinent part that:

> the rights or interest of a Member or Beneficiary may not be assigned or hypothecated, and to the extent permitted by law, no payments shall be subject to legal process or attachment for the payment of claims of any person entitled to receive the same.

(Defendant's Exh. # 1). Article X(a) of the Trust contains a similar restraint on alienation (Defendant's Exh. # 2). The ESOP provides that the stock may be distributed only upon retirement, death or termination of employment. Furthermore, the ESOP does not permit loans to participants and the Debtor does *not* exercise "absolute dominion" over the stock in the ESOP, unlike the Debtor in *Goff, supra*.

Thus, there is hardly any question that the ESOP involved here is clearly distinguishable from the control of the parties excercised in the ERISA plans involved in *Goff* and *Lichstrahl* cases, *supra*. Based on the foregoing, this Court is satisfied that the ESOP would qualify as a spendthrift trust under Florida law and, therefore, excluded from the property of the estate under § 541(c)(2). Since the ESOP is excluded from the property of the estate under § 541(c)(2), the question of a right to exemption is academic and rendered moot.

However, it is conceded by Florida Progress that the Debtor has an absolute right to 56 shares held for him by the trustee in ESOP but cannot even alienate or transfer the balance of his interest in ESOP. This being the case, it is clear that while the Trustee is entitled to a turnover order of the 56 shares, the ESOP plan maintained by Florida Progress contains more than adequate anti-alienation provisions in general, and thus, would qualify as a spendthrift trust under the laws of the state of Florida.

As noted *supra*, the 56 shares of Florida Progress stock in which the Debtor has an interest in the property of the estate are subject to turnover to the Trustee. Contrary to the Trustee's contention, the ESOP's status as a spendthrift trust is not destroyed because a fraction of the Debtor's interest in the ESOP is distributable *i.e.* 56 shares from a total of 587.588 shares. A recent decision by the Florida Supreme Court unequivocally establishes that a trust does not cease to be a spendthrift trust merely because the trust is making distributions to beneficiaries under order of a court. *See Bacardi v. White*, 463 So.2d 218 (Fla.1985).

Finally, Florida Progress has also expressed concern that compliance with a court ordered distribution will cause the ESOP to lose its tax-qualified status under IRC § 401(a). The turnover of the 56 shares of stock does not affect the tax-qualified status of the ESOP and as this Court has determined, the remaining shares of stock are excluded from the estate pursuant to § 541(c)(2) and will not be subject to an order of turnover by this Court. Therefore, any alleged tax consequences are irrelevant to an overall consideration and determination in this proceeding.

As noted earlier, this matter is presented for this Court's consideration by a Motion for Summary Judgment filed by Florida Progress, the Defendant, and the Trustee did not file a cross Motion for Summary Judgment. Thus, the Court must consider whether or not it is proper at this time to enter a summary judgment for a non-moving party. Although there is some authority to the contrary, the great weight of authority is that it is not necessary to request a formal cross Motion for Summary Judgment and if it appears to the satisfaction of the Court that there are no genuine issues of material fact and the non-mov-

ing party is entitled to judgment as a matter of law it is appropriate to grant the motion even though the other party did not seek a determination of the matter by way of Motion for Summary Judgment. *See Pueblo of Santa Ana v. Mountain States Telephone & Telegraph Co.*, 734 F.2d 1402 (10th Cir.1984), *rev'd on other grounds*, 472 U.S. 237, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985); *Viger v. Commercial Insurance Co. of Newark, N.J.*, 707 F.2d 769 (3rd Cir.1983).

In sum, the ESOP and the Trust satisfy the requirements of IRC § 401(a)(13) as a tax-qualified plan. The ipso facto clause allegedly applicable to the 56 shares of Florida Progress stock is unenforceable pursuant to § 541(c)(1)(B). The ESOP and the Trust qualify as a spendthrift trust under Florida law, and therefore, except for the Debtor's vested interest, i.e., the 56 shares, are excluded from property of the estate pursuant to § 541(c)(2). Based on the foregoing, this Court is satisfied that there are no genuine issues of material fact and that Florida Progress is entitled to partial summary judgment as a matter of law and the Trustee is entitled to a judgment with regard to the 56 shares.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by Florida Progress be, and the same is hereby, granted in part and denied in part. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment be, and the same is hereby, denied with respect to the 56 shares of stock of the ESOP in which the Debtor has an interest and the 56 shares shall be turned over to the Trustee. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment be, and the same is hereby, granted as to the Debtor's remaining shares of the ESOP and are excluded from property of the estate pursuant to § 541(c)(2).